1  HEATHER E. WILLIAMS, CA SBN #122664
   Federal Defender
2  REED GRANTHAM, CA SBN #294171
   Assistant Federal Defender
3  Office of the Federal Defender
   2300 Tulare Street, Suite 330
4  Fresno, CA  93721-2226
   Telephone: (559) 487-5561
5  Fax: (559) 487-5950

6  Attorney for Defendant
   AUSTIN CAREY

7

8                  IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              District Court Case No. 1:17-cr-00252-LJO
                                           (Magistrate Case No. 6:16-mj-00088-MJS)
12                  Plaintiff,
                                           **APPELLANT'S OPENING BRIEF**
13  vs.
                                           Date:  TBD
14  AUSTIN CAREY,                          Time: TBD
                                           Judge: Hon. Lawrence J. O'Neill
15                  Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**PAGE**

I.    STATEMENT OF JURISDICTION..........................................................................1

II.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................1

III.  BAIL STATUS ..........................................................................................................2

IV.   STATEMENT OF THE CASE...................................................................................2

      A.    Pre-trial Proceedings .......................................................................................2

      B.    Bench Trial .......................................................................................................2

      C.    Post-trial Proceedings......................................................................................3

V.    ARGUMENT ..............................................................................................................5

      A.    The Magistrate Judge Violated Mr. Carey's Constitutional Right
            To Due Process Of Law By Shifting The Burden Of Proof Of An
            Essential Element Of The Offense ...............................................................5

      B.    The Magistrate Judge Erred By Failing To Recuse Himself After
            Improperly Reading And Considering Particularly Prejudicial And
            Inflammatory Extrajudicial News Media Regarding Mr. Carey After
            The Close Of Evidence And Before A Finding Of Guilt ...........................13

VI.   CONCLUSION.........................................................................................................18

Carey - Appellant's Opening Brief

1

# TABLE OF AUTHORITIES

2

**PAGE**

3

## FEDERAL CASES

4

*Hockenberry v. United States*
422 F.2d 171 (9th Cir. 1970) ............................................................9
5

6

*In re McCarthey*
368 F.3d 1266 (10th Cir. 2004) ..................................................14, 16
7

*In re Winship*
397 U.S. 358 (1970)...................................................................5, 9
8

9

*Jackson v. Virginia*
443 U.S. 307 (1979).........................................................................5
10

11

*Liljeberg v. Health Servs. Acquisition Corp.*
486 U.S. 847 (1988) .......................................................................14
12

*Liteky v. United States*
510 U.S. 540 (1994) ..................................................................13, 16
13

14

*McKelvey v. United States*
260 U.S. 353 (1922).........................................................................9
15

16

*Newton v. Superior Court of California*
803 F.2d 1051 (9th Cir. 1986) ..........................................................5
17

18

*United States v. Bibbins*
637 F.3d 1087 (9th Cir. 2011) ........................................................13
19

20

*United States v. Carroll*
813 F. Supp. 698 (E.D. Mo. 1993)....................................................7
21

22

*United States v. Cook*
84 U.S. 168 (1872).........................................................................10
23

*United States v. Durrani*
835 F.2d 410 (2d Cir. 1987)........................................................8, 10
24

25

*United States v. Freter*
31 F.3d 783 (9th Cir. 1994) ..............................................................9
26

27

*United States v. Henry*
615 F.2d 1223 (9th Cir. 1980) ..........................................................9

28

1

**TABLE OF AUTHORITIES (Cont'd)**

2

**PAGE**

3

**FEDERAL CASES (cont'd)**

4

*United States v. Holland*

5

519 F.3d 909 (9th Cir. 2008) ..................................................................13, 14, 17

6

*United States v. Kaluna*

152 F.3d 1069 (9th Cir. 1998) ........................................................................11

7

*United States v. Kloess*

8

251 F.3d 941 (11th Cir. 2001) ........................................................................10

9

*United States v. McArthur*

108 F.3d 1350 (11th Cir. 1997) ...................................................................8, 10

10

11

*United States v. Oxx*

56 F. Supp. 2d 1214 (D. Utah 1999)............................................... *passim*

12

*United States v. Shafi*

13

252 F. Supp. 3d 787 (N.D. Cal. 2017) ...................................................8, 10, 11

14

*United States v. Vuitch*

15

402 U.S. 62 (1971)..............................................................6, 7, 8, 9, 10

16

*Yagman v. Republic Ins.*

987 F.2d 622 (9th Cir. 1993) ........................................................................13

17

18

**FEDERAL STATUTES AND REGULATIONS**

United States Code

19

18 U.S.C. § 3231..................................................................................1

18 U.S.C. § 3401.............................................................................1, 13

20

18 U.S.C. § 3402..................................................................................1

28 U.S.C. § 455............................................................................ *passim*

21

18 U.S.C. § 636..................................................................................13

28 U.S.C. § 2106..............................................................................18

22

Code of Federal Regulations

23

36 C.F.R. § 2.17(a)(3)..................................................................2, 3, 5, 7

24

36 C.F.R. § 2.34(a)(4)..................................................................2, 3

25

Federal Rules of Criminal Procedure

58(g)(2)(B)......................................................................................1

26

United States Constitution

27

Fifth Amendment ..........................................................................5, 12

Sixth Amendment ..........................................................................13

28

**TABLE OF AUTHORITIES (Cont'd)**

PAGE

**FEDERAL STATUTES AND REGULATIONS (cont'd)**

Ninth Circuit Manual Model Criminal Jury Instructions
1.8, Conduct of the Jury ..................................................................................17

**MISCELLANEOUS**

American Bar Association's Model Code of Judicial Conduct Rule 2.9(C) ...............12, 17

American Bar Association's Standing Committee on Ethics and Professional
Responsibility, Formal Opinion 478 ..........................................................12, 17

Pablo Lopez, The Fresno Bee, *He leaps off Yosemite cliffs, knowing it's illegal. Can his court case make BASE jumping legit?* (Aug. 10, 2017), *available at,* http://www.fresnobee.com/news/local/article166303332.html ....................................3, 14

Pablo Lopez, The Fresno Bee, *BASE jumper challenges law against sport in Yosemite* (Aug. 10, 2017) .............................................................................................4, 14

Defendant-Appellant Austin Carey appeals the Order and Judgment imposed by the magistrate judge following Mr. Carey's bench trial.

The magistrate judge violated Mr. Carey's constitutional right to due process by improperly shifting the burden of proof to Mr. Carey to prove an essential element of the offense. Additionally, the magistrate judge erred by failing to recuse himself after improperly reading and considering particularly prejudicial and inflammatory extrajudicial news media regarding Mr. Carey after the close of evidence and before a finding of guilt. Given these errors, this Court should reverse the magistrate judge's Order and enter a judgment of acquittal. In the alternative, this Court should remand to a different magistrate judge for retrial.

## I.   STATEMENT OF JURISDICTION

This is a direct appeal from a final judgment in a misdemeanor criminal case. This Court, therefore, has jurisdiction over Mr. Carey's appeal pursuant to 18 U.S.C. §§ 3231 and 3402. The magistrate judge had jurisdiction over this criminal case pursuant to 18 U.S.C. §§ 3231 and 3401.

The magistrate judge filed and entered a Judgment and Commitment on October 20, 2017. *See* Docket No. 14.[1] Mr. Carey filed his Notice of Appeal on October 31, 2017. *See* Docket No. 17. The appeal is therefore timely under Federal Rule of Criminal Procedure 58(g)(2)(B).

## II.   STATEMENT OF ISSUES PRESENTED FOR REVIEW

This appeal presents two issues for this Court's consideration: (1) whether the magistrate judge violated Mr. Carey's constitutional right to due process by improperly shifting the burden of proof to Mr. Carey to prove an essential element of the offense; and (2) whether the magistrate judge erred by failing to recuse himself after improperly reading and considering particularly prejudicial and inflammatory extrajudicial news media regarding Mr. Carey after the close of evidence and before a finding of guilt.

//

---

[1] On December 7, 2017, the magistrate judge filed a First Amended Judgment and Commitment, ordering restitution and correcting the original sentence by removing a condition that ordered forfeiture. *See* Docket No. 19 in Case No. 6:16-mj-88-MJS.

### III.   BAIL STATUS

Mr. Carey is out of custody. By order of the magistrate judge and pursuant to Federal Rule of Criminal Procedure 38, the sentence imposed by the magistrate judge is currently stayed pending this appeal.

### IV.   STATEMENT OF THE CASE

#### A.   Pre-trial Proceedings

On September 6, 2016, Mr. Carey was arrested in Yosemite National Park, on suspicion of delivering a person or object by parachute, helicopter, or other airborne means without a permit and for disorderly conduct. *See* Docket No. 1.

On November 30, 2016, the Yosemite Legal Office ("Legal Office") filed a two-count Criminal Complaint, charging Mr. Carey with delivering a person or object by parachute, helicopter, or other airborne means without a permit in violation of 36 C.F.R. § 2.17(a)(3) (Count 1) and for disorderly conduct in violation of 36 C.F.R. § 2.34(a)(4) (Count 2). *See* Docket No. 1.

On December 6, 2016, Mr. Carey entered not guilty pleas to the two charges in the Complaint. *See* Docket No. 4. On May 16, 2017, the parties set the matter for a bench trial to take place on August 9, 2017. *See* Docket No. 6.

One week prior to the trial, on August 2, 2017, the Legal Office filed a Trial Brief. *See* Docket No. 7. In the Trial Brief, the Legal Office listed the elements for each offense that must be established beyond a reasonable doubt. *See* Docket 7 at 3. Specifically, the Trial Brief indicated that "[i]n order to prove [36 C.F.R. § 2.17(a)(3)] the following elements must be established beyond a reasonable doubt: (1) [t]he defendant delivered a person or object; (2) [b]y parachute, helicopter, or other airborne means; (3) [w]ithout emergency involving public safety or serious property loss; and (4) [n]ot pursuant to the terms and conditions of a permit." *Id.*

#### B.   Bench Trial

The magistrate judge held a bench trial on August 9, 2017. *See* Docket No. 8. In its case-in-chief, the Legal Office called two witnesses, Yosemite National Park Ranger Owen Conlow and Justin Buzzard. Tr. 4-44.[2] Neither witness testified that Mr. Carey did not have a permit. At

---

[2] "Tr." refers to the transcript of the hearing, filed at Docket Number 20 in Case No. 1:17-cr-252-LJO.

the conclusion of their testimony, the Legal Office rested its case. Tr. 44, lines 14-15. The defense did not call any witnesses and moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Tr. 45, lines 20-21. Although the magistrate judge initially denied the Rule 29 motion without argument, Tr. 45, lines 22-23, upon defense counsel's request to submit argument in support of the Rule 29 motion, Tr. 50, lines 14-15, the magistrate judge withdrew the denial of the Rule 29 motion and reserved judgment until after defense argument. Tr. 50, lines 17-19.

In support of the motion for judgment of acquittal, defense counsel argued that the Legal Office failed to meet its burden of proving the elements of 36 C.F.R. § 2.17(a)(3) ("the aerial delivery charge") beyond a reasonable doubt because the Legal Office failed to introduce any evidence that Mr. Carey did not have a permit or act in response to an emergency involving public safety or serious property loss. Tr. 53-55. In support of this argument, defense counsel cited to *United States v. Oxx*, 56 F. Supp. 2d 1214 (D. Utah 1999). Tr. 53, lines 12-18. In *Oxx*, the district court held that the absence of a permit was an essential element of the offense that the government must establish beyond a reasonable doubt. Tr. 53, lines 14-18.

In addition, defense counsel argued that the Legal Office failed to meet its burden of showing under 36 C.F.R. § 2.34(a)(4) ("the disorderly conduct charge"), that Mr. Carey knowingly or recklessly created or maintained a hazardous or physically offensive condition and that the Legal Office's failure to meet its burden of proof as to the aerial delivery charge likewise invalidated a finding of guilt as to the disorderly conduct charge. Tr. 56-58.

The government did not seek to re-open the case or otherwise provide additional testimony.

At the conclusion of argument, the magistrate judge took the matter under submission and indicated that a written decision would be forthcoming. Tr. 62-63, lines 24-25, 1.

**C.    Post-trial Proceedings**

On the afternoon of August 9, 2017, the date of the trial, The Fresno Bee published an online article about Mr. Carey and his case, entitled "He leaps off Yosemite cliffs, knowing it's illegal. Can his court case make BASE jumping legit?" *See* Pablo Lopez, The Fresno Bee, *He*

*leaps off Yosemite cliffs, knowing it's illegal. Can his court case make BASE jumping legit?* (Aug. 9, 2017), *available at*, http://www.fresnobee.com/news/local/article166303332.html. The following day, on August 10, 2017, The Fresno Bee published a nearly identical front-page print article about Mr. Carey and his case, entitled, "BASE jumper challenges law against sport in Yosemite." *See* Pablo Lopez, The Fresno Bee, *BASE jumper challenges law against sport in Yosemite* (Aug. 10, 2017). The first line of the article, in both the print and online version, is: "Austin Carey says he loves to leap from Yosemite National Park's towering granite cliffs." *Id.*

On September 26, 2017, the magistrate judge issued the Order and Judgment in this case, finding Mr. Carey guilty on both counts. *See* Docket No. 9 at 1. In the Order, the magistrate judge concluded—contrary to *United States v. Oxx*—that the absence of a permit is not an essential element of the offense that the government must establish beyond a reasonable doubt and that instead, the "[d]efendant bears the burden of proving that he was permitted to BASE jump." *Id.* at 11. The magistrate judge's Order also contained explicit reference to the August 10, 2017 Fresno Bee article regarding Mr. Carey: "In short, while some, reportedly including Defendant [footnote citation provided to the online version of The Fresno Bee article], might like to see this case produce an endorsement of BASE jumping and/or condemnation of the regulation prohibiting it, and others will seek just the opposite, it will do no such thing." *Id.* at 3. The Order also contained seven other citations to extrajudicial material not introduced or admitted by either party during the trial. *Id.* at 2 fns. 2-3, 5 fn. 8, and 11 fns. 10-11.

On October 19, 2017, the magistrate judge sentenced Mr. Carey to twenty-four months of unsupervised probation, with the conditions that he pay a $5,000 fine and that he perform 300 hours of community service. *See* Docket Nos. 13 and 19 in Case No. 6:16-mj-88-MJS. The magistrate judge also ordered Mr. Carey to forfeit his equipment; however, defense counsel objected to that portion of the magistrate judge's decision that ordered forfeiture of Mr. Carey's equipment and the magistrate judge set a further hearing to determine the propriety of the forfeiture order and restitution. *See* Docket No. 13. At Mr. Carey's request, the magistrate judge stayed the imposition of the sentence pursuant to Federal Rule of Criminal Procedure 38, pending the outcome of any appeal to this Court. *Id.*

On October 31, 2017, Mr. Carey filed a timely notice of appeal. *See* Docket No. 17.

On December 5, 2017, a hearing was held as to restitution and forfeiture. *See* Docket No. 18 in Case No. 6:16-mj-88-MJS. At the hearing, the magistrate judge ordered restitution and amended the magistrate's judge previous sentence by removing the order that Mr. Carey forfeit his equipment. *Id.* On December 7, 2017, the magistrate judge filed the First Amended Judgment and Commitment, reflecting those changes. *See* Docket No. 19 in Case No. 6:16-mj-88-MJS.

## V.   ARGUMENT

### A.   The Magistrate Judge Violated Mr. Carey's Constitutional Right To Due Process Of Law By Shifting The Burden Of Proof On An Essential Element Of The Offense

The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. It is axiomatic that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see also Jackson v. Virginia*, 443 U.S. 307, 316 (1979) ("[N]o person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."). Such a standard "provides concrete substance for the presumption of innocence—that bedrock . . . principle whose enforcement lies at the foundation of the administration of our criminal law." *Winship*, 397 U.S. at 363 (internal quotations and citations omitted). Accordingly, a violation of due process occurs if a criminal conviction is not based on evidence sufficient to establish beyond a reasonable doubt the existence of every element of the offense. *Newton v. Super. Ct. of Cal.*, 803 F.2d 1051, 1058 (9th Cir. 1986).

Section 2.17(a)(3) of Title 36 of the Code of Federal Regulations prohibits "[d]elivering or retrieving a person or object by parachute, helicopter, or other airborne means, except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit." In its Trial Brief, the government indicated that "[i]n order to prove [36 C.F.R. § 2.17(a)(3)] the following elements must be established beyond a reasonable doubt: (1)

[t]he defendant delivered a person or object; (2) [b]y parachute, helicopter, or other airborne means; (3) [w]ithout emergency involving public safety or serious property loss; and (4) [n]ot pursuant to the terms and conditions of a permit." *Id.* After a bench trial at which the government failed to introduce any evidence regarding whether a permit had been issued, the defense moved for a judgment of acquittal on the grounds that the government had failed to prove an essential element of the offense beyond a reasonable doubt. Tr. 45, 53-55. In a written Order, the magistrate judge determined that the absence of a permit was not an element of the offense that the government had to prove beyond a reasonable doubt. *See* Docket No. 9 at 11. Instead, the magistrate judge concluded, "[Mr. Carey] [bore] the burden of proving that he was permitted to BASE jump." *Id.* By placing the burden of proof on Mr. Carey to prove the existence of a permit, the magistrate judge unconstitutionally shifted the burden of proof on an essential element of the offense, in violation of due process.

In 1971, the U.S. Supreme Court in *United States v. Vuitch*, applying the "general guide to the interpretation of criminal statutes," held that "when an exception is incorporated in the enacting clause of a statute, the burden is on the prosecution to plead and prove that the defendant is not within the exception." 402 U.S. 62, 70 (1971). In *Vuitch*, the statute at issue provided as follows:

> Whoever, by means of any instrument, medicine, drug or other means whatever, procures or produces, or attempts to procure or produce an abortion or miscarriage on any woman, *unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine,* shall be imprisoned in the penitentiary not less than one year or not more than ten years * * *.

*Id.* at 68 (emphasis added). Concluding that the statutory exception was incorporated in the enacting clause of the statute, the Supreme Court held that "the burden is on [the government] to plead and prove that an abortion was not 'necessary for the preservation of the mother's life or health.'" *Id.* at 71. In this case, section 2.17(a)(3) provides that:

> The following are prohibited . . . . Delivering or retrieving a person or object by parachute, helicopter, or other airborne means, *except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit.*

36 C.F.R. § 2.17(a)(3) (emphasis added). As in *Vuitch*, the statutory language of section 2.17(a)(3) appears immediately after the initial clause proscribing the conduct in question. Therefore, the language of section 2.17(a)(3), like that in *Vuitch*, falls within the general guide of criminal statutory interpretation set forth and made applicable by *Vuitch* that holds that language of a criminal statute that is incorporated in the enacting clause of the statute constitutes an element of the offense that the prosecution must plead and prove beyond a reasonable doubt. *Vuitch*, 402 U.S. at 70. Accordingly, in this case, the government bore the burden to prove beyond a reasonable doubt that Mr. Carey did not have a permit. By placing the burden instead on Mr. Carey to prove this element of the offense, the magistrate judge violated Mr. Carey's constitutional right to due process of law.

Only two published cases have specifically addressed whether the absence of a permit in section 2.17(a)(3) constitutes an element of the offense that the government must prove beyond a reasonable doubt. *See United States v. Carroll*, 813 F. Supp. 698 (E.D. Mo. 1993); *United States v. Oxx*, 56 F. Supp. 2d 1214 (D. Utah 1999). In both cases, the court, either implicitly in the case of *United States v. Carroll* or explicitly in the case of *United States v. Oxx*, concluded that in order to find a defendant guilty under section 2.17(a)(3), the government was required to establish beyond a reasonable doubt that the defendant did not have a permit to deliver himself by parachute. *Carroll*, 813 F. Supp. at 703; *Oxx*, 56 F. Supp. 2d at 1220.

In *United States v. Carroll*, the defendant was charged with aiding and conspiring with another individual to violate section 2.17(a)(3). In concluding that the defendant had aided and abetted and conspired with another individual to violate section 2.17(a)(3), the district court noted that the "evidence is undisputed that no permit or other authorization was granted for the climb or the parachute jump." 813 F. Supp. at 703. This conclusion was supported by evidence adduced at trial demonstrating that "[n]either [the defendant nor the co-conspirators] had applied for or received an appropriate permit, permission, or authorization either to climb the [St. Louis] Arch, to jump from it, or to photograph the jump." *Id.* at 702.

In *United States v. Oxx*, the government charged nine defendants with violating section 2.17(a)(3). 56 F. Supp. 2d at 1215. Following a bench trial, the district court found the

defendants not guilty of section 2.17(a)(3) after concluding that the government was required to prove the absence of a permit beyond a reasonable doubt and finding that the government had failed to introduce any evidence that the defendants did not have a permit to deliver themselves by parachute. *Id.* at 1218-22. In so finding, the district court in *Oxx* relied on the "general guide to the interpretation of criminal statutes" set forth in *Vuitch* that "when an exception is incorporated in the enacting clause of a statute, the burden is on the prosecution to plead and prove that the defendant is not within the exception." 402 U.S. 62, 70 (1971).

Additionally, in determining whether the absence of a permit constituted an element of an offense that the government must prove beyond a reasonable doubt, the district court in *Oxx* looked to the three-part analysis set forth in *United States v. Durrani*, 835 F.2d 410 (2d Cir. 1987). *Accord United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997); *United States v. Shafi*, 252 F. Supp. 3d 787, 793 (N.D. Cal. 2017). In *Durrani*, the Second Circuit applied a three-part test to determine what constituted an element of the offense. *Id.* In particular, the court reviewed (1) the text and structure of the statute in question, (2) the legislative history of the statute, and (3) the parties' relative ability to present evidence on the issue. *Durrani*, 835 F.2d at 420.

Applying this analysis, and first looking to the text and structure of section 2.17(a)(3), the district court in *Oxx* determined that it was "clear that the lack of a permit falls within the description of [section 2.17(a)(3)'s] forbidden conduct" and that it was "equally clear that the absence of a permit would also negate a justification for the offense." *Oxx*, 56 F. Supp. 2d at 1220. In evaluating the legislative history of section 2.17(a)(3), the district court noted that "the major portion of the legislative history [of section 2.17(a)(3)] . . . discusses the process for issuing a permit," suggesting congressional intent to make the absence of a permit an element of the offense. *Id.* Lastly, the district court, looking to the parties' respective abilities to introduce information on the issue, found that "the United States, as the issuer of the permit, would be in the best position to demonstrate the non-existence of such authorization," which "could have easily been demonstrated by having the Park Superintendent or some other official person testify that no permits for BASE jumping had been issued to any of the defendants." *Id.* Given that all

three factors weighed in favor of considering the absence of a permit an essential element of the offense, and recognizing a criminal defendant's presumption of innocence and right to due process, which includes that the government must prove beyond a reasonable doubt all elements of the offenses charged, the district court concluded that "the [government's] failure to establish this element mandates acquittal." *Id.* The present case involves precisely the same issue, with all factors, as in *Oxx*, weighing in favor of finding the absence of a permit an element of the offense that the government was obligated to prove beyond a reasonable doubt. As in *Oxx*, the government's failure to introduce any evidence on the issue of whether Mr. Carey had a permit mandates acquittal.

In concluding—contrary to the district court in *Oxx*—that the absence of a permit did not constitute an element of the offense that the government was required to prove beyond a reasonable doubt, the magistrate judge in this case relied on a U.S. Supreme Court decision predating *Vuitch* by fifty years that provided "that an indictment . . . need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it." *McKelvey v. United States*, 260 U.S. 353, 357 (1922). The magistrate judge further relied on a series of Ninth Circuit cases—*Hockenberry v. United States*, 422 F.2d 171 (9th Cir. 1970), *United States v. Henry*, 615 F.2d 1223 (9th Cir. 1980), and *United States v. Freter*, 31 F.3d 783 (9th Cir. 1994)—applying *McKelvey*. However, *McKelvey* involved a statutory exception clause subsequent to, and in addition to, the enacting clause, distinguishing it from *Vuitch*. *See McKelvey*, 260 U.S. at 357. Moreover, the U.S. Supreme Court decided *Vuitch* in 1971, one year after *In re Winship* in 1970, where the Supreme Court held for the first time that due process requires the government to provide "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Accordingly, the fact that the holding in *Vuitch*, placing the burden on the government to plead and prove a statutory exception, follows *Winship*, is further indicative that placing the burden on the government more closely comports with modern conceptions of due process and the presumption of innocence afforded criminal defendants. *See Oxx*, 56 F. Supp. 2d at 1221.

Although this case falls squarely within the holding of *Vuitch*, multiple circuits now employ the three-part analysis applied in *Oxx* and performed by the magistrate judge in this case to determine what constitutes an element of the offense. *See Durrani*, 835 F.2d at 420; *McArthur*, 108 F.3d at 1353; *Shafi*, 252 F. Supp. 3d at 793; *United States v. Kloess*, 251 F.3d 941, 944 (11th Cir. 2001). In applying the three factors in this case, as the district court did in *Oxx*, all three factors weigh in favor of finding the absence of a permit an element of the offense that the government was obligated to prove beyond a reasonable doubt.

In evaluating the text and structure of section 2.17(a)(3), every indication is that the language "pursuant to the terms and conditions of a permit" is fully incorporated within the substantive language of the statute. *See United States v. Cook*, 84 U.S. 168, 173 (1872) ("When a statute defining an offence contains an exception, in the enacting clause of the statute, which is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must alleged enough to show that the accused is not within the exception . . . ."). Indeed, as set forth in *Oxx*, it is clear that the language pertaining to the permit requirement, as in *Vuitch*, "falls within the description of the forbidden conduct" and not in a separate section or sentence. *Oxx*, 56 F. Supp. 2d at 1220. Accordingly, because such language appears within the text and structure of the statute itself, and not in a separate section or sentence, this factor leans in favor of finding the absence of a permit to be an element of the offense.

Although the magistrate judge noted that the district court in *Oxx* determined that the congressional intent was not explicit in the fashioning of section 2.17(a)(3), the extensive legislative history set forth in *Oxx* suggests otherwise. *See Oxx*, 56 F. Supp. 2d at 1220. Indeed, the district court in *Oxx* referred to multiple parts of the legislative history of section 2.17(a)(3) where the primary concern in drafting the statute was ensuring that aerial delivery only be prohibited "unless a permit has been issued" and extensively discussing "the process for issuing a permit." *Oxx*, 56 F. Supp. 2d at 1220 (citing 48 Fed. Reg. 56974 (Dec. 27, 1983), 49 Fed. Reg. 18488 (Apr. 30, 1984), 30 Fed. Reg. 1857 (proposed Feb. 9, 1965)). Such a legislative history

lends credence to the claim that Congress intended the possession of a permit, or lack thereof, to be a significant factor as to whether an individual in fact violated section 2.17(a)(3). Likewise, 36 C.F.R. § 7.16(c), a special regulation pertaining only to Yosemite National Park, provides as follows: "Powerless flight. The use of devices designed to carry persons through the air in powerless flight is allowed at times and locations designated by the superintendent, pursuant to the terms and conditions of a permit." The permissive language of section 7.16(c), also applying to Yosemite National Park, and covering the alleged activity in this case, is further evidence that the possession, or lack thereof, of a permit is central to the *corpus delicti* of section 2.17(a)(3), and suggests an implied congressional intent that the possession of a permit, or lack thereof, to be an essential element of section 2.17(a)(3).

Lastly, in determining whether statutory language incorporated within the statute itself constitutes an element of the offense, courts look to whether the defendant or the government is better situated to present evidence on the issue. *See Shafi*, 252 F. Supp. 3d at 793. As set forth by the district court in *Oxx*, it seems obvious "that the United States, as the issuer of the permit would be in the best position to demonstrate the non-existence of such authorization." *Oxx*, 56 F. Supp. 2d at 1220. This is in large part because the government "with its ready access to official files and records" is in a superior position to demonstrate whether an official permit was issued. *United States v. Kaluna*, 152 F.3d 1069, 1079 (9th Cir. 1998) (opinion withdrawn after hearing *en banc* granted). In this case, the government "could have easily [so] demonstrated by having the Park Superintendent or some other official person testify that no permits for BASE jumping had been issued" but chose not to. *Id.* Significantly, the government, like the government in *Oxx*, explicitly acknowledged that "to prove [the aerial delivery charge]" the government must establish that the offense occurred "[n]ot pursuant to the terms and conditions of a permit," yet nonetheless declined to introduce any evidence on this element. Docket No. 7 at 3. Moreover, the magistrate judge, in determining that Mr. Carey would have been in the best position to introduce such evidence,[3] ignores how a defendant in a criminal case would even be able to

---

[3] In concluding that Mr. Carey would have been in the best position to provide evidence of a permit, the magistrate judge relied on the Yosemite National Park Superintendent's Compendium and Yosemite National Park Safety Regulations, both of which can be found

introduce such evidence, where, as here, the defendant exercises his or her Fifth Amendment right against self-incrimination and chooses not to testify at trial. U.S. CONST. amend. V ("No person shall be . . . compelled in any criminal case to be a witness against himself."). In such cases, the only way for the defendant to introduce evidence of a permit would be to subpoena a government official to testify to the existence of the permit. Given that such records are already maintained and kept by the government, it seems obvious that the government is better situated to introduce such evidence and, accordingly, should bear the burden to plead and prove the absence of a permit when charging a defendant under section 2.17(a)(3).

As all three factors weigh in favor of concluding that the absence of a permit constitutes an element of the offense that the government must prove beyond a reasonable doubt, the magistrate judge in this case erred by improperly shifting the burden of proof as to this element of the offense by requiring that Mr. Carey bear the burden of proof that his conduct was permitted, in violation of due process. As a result, Mr. Carey's motion for judgment of acquittal should be granted and a judgment of acquittal entered as to the aerial delivery charge in Count 1.

---

online, which indicate that BASE jumping is prohibited in Yosemite National Park. *See* Docket No. 9 at 11. According to the magistrate judge, since these regulations provide that BASE jumping is prohibited in Yosemite National Park, the burden is better placed on Mr. Carey to demonstrate the existence of a permit. *Id.* However, neither the Superintendent's Compendium nor the Safety Regulations were admitted as evidence at trial and no government witness provided any testimony regarding the legality or permitting process for BASE jumping within the Park, which indicates that the magistrate judge conducted independent research, after the close of evidence, and before ruling on Mr. Carey's guilt, of extrajudicial material potentially favorable to the government. Such independent factual research of extrajudicial material by a magistrate judge via the internet that is untested by the adversary system and considered after the close of evidence explicitly violates American Bar Association's Model Code of Judicial Conduct Rule 2.9(C), which provides that "[a] judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." *See also* American Bar Association's Standing Committee on Ethics and Professional Responsibility, Formal Opinion 478 ("[J]udges should not use the Internet for independent fact-gathering related to a pending or impending matter where the parties can easily be asked to research or provide the information."). If the magistrate judge believed that such facts were judicially noticeable—which the defense does not agree is the case here—the defense was never presented with an opportunity to make a request "to be heard on the propriety of taking judicial notice," as the magistrate judge conducted the independent research after the close of evidence, without informing the parties of the magistrate judge's intention to take judicial notice, and only took judicial notice of facts in the September 26, 2017 Order and Judgment finding Mr. Carey guilty of both offenses. *See* Fed. R. Evid. 201(e).

As the disorderly conduct charge in Count 2 is predicated on Mr. Carey's guilt as to the aerial delivery charge in Count 1, a judgment of acquittal should enter for both counts.

**B.     The Magistrate Judge Erred By Failing To Recuse Himself After Improperly Reading And Considering Particularly Prejudicial And Inflammatory Extrajudicial News Media Regarding Mr. Carey After The Close Of Evidence And Before A Finding Of Guilt**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . trial, by an impartial jury of the state and district wherein the crime shall have been committed." U.S. CONST. amend. VI. Section 636(a)(3) of Title 28 of the United States Code grants magistrate judges "the power to conduct trials under section 3401, Title 18, United States Code, in conformity with and subject to the limitations of that section." Section 3401(a) of Title 18 of the United State Code provides that "any United States magistrate judge shall have jurisdiction to try persons accused of, and sentence persons convicted of, misdemeanors committed within that judicial district." Accordingly, in accordance with the procedures set forth in section 3401, a United States magistrate judge may sit as the fact-finder and has authority to try individuals accused of misdemeanors within the judicial district. *See United States v. Bibbins*, 637 F.3d 1087 (9th Cir. 2011). In this case, Mr. Carey proceeded to a bench trial before the magistrate judge on the basis of a criminal complaint charging him with two misdemeanor offenses.

Section 455(a) of Title 28 of the United States Code provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." While section 455 "imposes an affirmative duty upon judges to recuse themselves," a judge's failure to recuse himself can be raised on direct appeal. *Yagman v. Republic Ins.*, 987 F.2d 622, 626-27 (9th Cir. 1993). Pursuant to section 455(a), "recusal is appropriate where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id.* (internal quotation marks and citation omitted); *see also United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). An analysis under section 455(a) requires an "evaluation on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States,*

510 U.S. 540, 548 (1994). Accordingly, section 455(a) contains an objective standard: "disqualification is appropriate only where the reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988). Disqualification under section 455(a) is necessarily fact-driven and may turn on subtleties in the particular case. *Holland*, 519 F.3d at 913. Consequently, "the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Id.* (internal quotation marks and citation omitted).

The trial in this case took place on the morning of August 9, 2017. At the conclusion of the trial, the magistrate judge indicated that the matter of Mr. Carey's guilt would be taken under submission and a written opinion would follow. Later, in the afternoon of August 9, 2017, The Fresno Bee published an online article about Mr. Carey and his case, entitled "He leaps off Yosemite cliffs, knowing it's illegal. Can his court case make BASE jumping legit?" *See* Pablo Lopez, The Fresno Bee, *He leaps off Yosemite cliffs, knowing it's illegal. Can his court case make BASE jumping legit?* (Aug. 9, 2017), *available at*, http://www.fresnobee.com/news/local/article166303332.html. The following day, on August 10, 2017, The Fresno Bee published a nearly identical front-page print article alternatively titled, "BASE jumper challenges law against sport in Yosemite." *See* Pablo Lopez, The Fresno Bee, *BASE jumper challenges law against sport in Yosemite* (Aug. 10, 2017).

The article provides a personal history of Mr. Carey, including alleged details regarding his long-time passion for BASE jumping, discusses his current criminal case in Yosemite National Park, and references an alleged desire to change the law prohibiting BASE jumping in Yosemite National Park. The following quotes are of particular importance here:

- "Austin Carey says he loves to leap from Yosemite National Park's towering granite cliffs."

- "Before his trial, Carey, 26, didn't deny being a BASE jumper."

- "Carey said he has BASE jumped in Yosemite at least 20 times in the past five years."

- "Carey hopes his case will draw attention to what he says is an injustice, and leads to legislation that will allow BASE jumping in Yosemite and other national parks."

- "Carey said the Park Service should share some blame in [other BASE jumpers'] deaths."

- "Since then, [Carey] said he has BASE jumped all over the United States and in Canada and Brazil."

- "The prosecutor wanted Carey to give up his wingsuit, but he initially refused, saying it had sentimental value. He then accepted his punishment."

As the above makes clear, Mr. Carey's alleged statements as represented in the article involve particularly prejudicial and damning admissions regarding his case. The alleged statements are also inflammatory, as they blame the National Park Service for BASE jumping fatalities in Yosemite National Park and express a desire to break the law.

On September 26, 2017, approximately a month and a half after the close of evidence on August 9, 2017, the magistrate judge issued the written Order in this case. The magistrate judge's Order contained explicit reference to the August 10, 2017 Fresno Bee article regarding Mr. Carey: "In short, while some, reportedly including Defendant [footnote citation provided to the online version of The Fresno Bee article], might like to see this case produce an endorsement of BASE jumping and/or condemnation of the regulation prohibiting it, and others will seek just the opposite, it will do no such thing." *Id.* at 3. The magistrate judge's explicit reference to The Fresno Bee article and to Mr. Carey's purported desire to see this case "produce an endorsement of BASE jumping" clearly indicates that the magistrate judge read and considered the contents of the article. The Order proceeded to find Mr. Carey guilty on all counts and set a date for sentencing. *Id.*

The magistrate judge in this case erred by failing to recuse himself, in accordance with 28 U.S.C. § 455(a), after improperly reading and considering the particularly prejudicial and inflammatory extrajudicial news media about Mr. Carey after the close of evidence and before

the rendering of judgment. Such statements were not introduced or admitted at trial, and consideration of the contents of the article imposed upon the magistrate judge an affirmative duty to recuse if a reasonable person would conclude that the magistrate judge's impartiality might reasonably be questioned after having read The Fresno Bee article. *See Liljeber*, 486 U.S. at 866 ("[T]he very purpose of section 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."). Given the particularly prejudicial (allegedly admitting to the offense in question and to at least twenty BASE jumps in Yosemite in the last five years) and inflammatory (blaming the National Park Service for BASE jumper deaths in Yosemite and expressing a knowing desire to break the law) nature of the statements contained in the article, a reasonable person would conclude the magistrate judge's impartiality to decide the matter might reasonably be questioned. *See Liteky*, 510 U.S. at 548 (noting that in a section 455(a) analysis "what matters is not the reality of bias or prejudice but its appearance"); *McCarthey*, 368 F.3d at 1269 (noting that disqualification is appropriate if a reasonable person, "were he to know all the circumstances, would harbor doubts about the judge's impartiality"). Additionally, the fact that Mr. Carey's alleged statements and admissions were extrajudicially considered is particularly problematic in this case, where Mr. Carey exercised his constitutional right not to testify and not to speak, making the magistrate judge's exposure to the alleged statements that much more troubling. *See* U.S. CONST. amend. V ("No person shall be . . . compelled in any criminal case to be a witness against himself, not be deprived of life, liberty, or property, without due process of law.").

In a bench trial, a magistrate judge sits as a trier of fact, responsible for weighing the evidence, assessing the credibility of any and all witnesses, and considering the arguments put forward by the parties in reaching a decision as to guilt or innocence. In this case, there is no question that the magistrate judge was sitting in this capacity. Accordingly, the magistrate judge was subject to the same admonitions applicable to jurors who sit as triers of fact, including the admonition to "not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it," and if the magistrate judge "happen[ed] to read or hear anything touching on this case in the media" to "turn away and report it . . . as soon as possible." Ninth

Circuit Manual of Model Criminal Jury Instructions 1.8 Conduct of the Jury. Notably, the first line of The Fresno Bee article, in both the print and online version, is: "Austin Carey says he loves to leap from Yosemite National Park's towering granite cliffs." Upon being confronted with the article and identifying Mr. Carey by reading the first line of the article it was incumbent upon the magistrate judge to either refrain entirely from reading the article, or, in the alternative, having read the article until it became clear that the article pertained to a party with a case pending before the magistrate judge (where the matter under consideration for determination of guilt), it was incumbent upon the magistrate judge to cease reading and to inform the parties of the exposure. In this case, none of the above occurred. Instead, the magistrate judge appeared to have read the article, declined to recuse himself pursuant to section 455(a), and proceeded to explicitly cite to the article in the Order finding Mr. Carey guilty of the charged offenses. Such conduct falls squarely within the ambit of section 455(a)'s proscription against even the appearance of impartiality when it comes to the ability of the magistrate to remain neutral in rendering a decision as to guilt or innocence.

As set forth above, an analysis under section 455(a) depends not on comparisons to similar cases, but rather on the particular subtleties of the case at issue. *Holland*, 519 F.3d at 913. Here, in addition to the fact that a reasonable person might question that appearance of the magistrate judge's impartiality in light of the magistrate having read and cited to the particularly prejudicial and inflammatory article, additional circumstances surrounding the matter further lend credence to the appearance of impartiality. As discussed above, *see supra* section V.B.fn. 3, it is clear that the magistrate judge engaged in independent factual research of extrajudicial material via the internet in violation of the American Bar Association's Model Code of Judicial Conduct Rule 2.9(C), which provides that "[a] judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." *See also* American Bar Association's Standing Committee on Ethics and Professional Responsibility, Formal Opinion 478. Significantly, such research was conducted after the close of evidence while the matter of Mr. Carey's guilt was under submission and was used by the magistrate judge in the Order to support the government's case and find Mr. Carey

guilty of the charged offenses. *See* Docket No. 9 at 11 fns. 10-11 (citing and referring to two extrajudicial documents for the proposition that BASE jumping is prohibited in Yosemite National Park despite the fact that the government introduced no evidence on this point). As the magistrate judge conducted this research after the close of evidence and before rendering a verdict, the defense had no opportunity to test, question, challenge, or otherwise respond to the extrajudicial admission of the online information, as would be required even if the magistrate judge attempted to take judicial notice of the material. *See* Federal Rule of Evidence 201(e). The independent factual research of extradjudicial material not introduced at trial and not subject to the testing of the adversarial system is further evidence, in conjunction with the improper consideration of the prejudicial and inflammatory article regarding Mr. Carey, upon which a reasonable person would conclude that the magistrate judge's impartiality might reasonably be questioned. Given the failure to recuse pursuant to section 455(a), remand for a new trial before a different magistrate is appropriate. *See* 28 U.S.C. § 2106.

## VI.   CONCLUSION

For the reasons set forth above, this Court should enter a judgment of acquittal as to the two counts in this case. Alternatively, this Court should remand this case to a different magistrate judge for retrial.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: February 2, 2018                  */s/ Reed Grantham*
REED GRANTHAM
Assistant Federal Defender
Attorney for Defendant-Appellant
AUSTIN CAREY