McGREGOR W. SCOTT
United States Attorney
JEFFREY A. SPIVAK
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:17-CR-00252-LJO |
|---|---|
| Plaintiff, | UNITED STATES' ANSWERING BRIEF |
| v. | DATE: TBD |
| AUSTIN CAREY, | TIME: TBD |
| Defendant. | COURT: Hon. Lawrence J. O'Neill |

    This Court should affirm defendant Austin Carey's conviction for BASE jumping at Yosemite National Park in violation of 36 C.F.R. § 2.17(a)(3) (delivering person by parachute or other airborne means) and 36 C.F.R. § 2.34(a)(4) (creating a hazardous condition).

    The Magistrate Judge properly held that 36 C.F.R. § 2.17(a)(3) did not require the government to prove the absence of an emergency or permit as an element of the offense. Additionally, the Magistrate Judge was not required to recuse himself from the case.

### I.  STATEMENT OF JURISDICTOIN

    This is an appeal from a magistrate judge's criminal conviction. This Court has jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3402. Judgment entered on October 20, 2017 (Doc. 14). Defendant filed a timely notice of appeal on October 31, 2017. (Doc. 17), Fed. R. Crim.P. 58(g)(2)(B).

### II.  ISSUES FOR APPEAL

- Did the Magistrate Judge properly conclude that 36 C.F.R. § 2.17(a)(3) did not require the government to prove the absence of an emergency or permit as an element of the offense?

- Did the Magistrate Judge act appropriately in not recusing himself *sua sponte* from Defendant's case?

### III. BACKGROUND

A. <u>Defendant Was Arrested and Tried For BASE Jumping in Yosemite National Park</u>

In the early hours of the morning on September 6, 2016, law enforcement rangers in Yosemite National Park (Yosemite) responded to a report of a person in a parachute hitting a tree in Yosemite near Glacier Point. (Order at 1.) Rangers responded and found Defendant suspended in the branches of a tree an estimated 130-150 feet above the ground. *Id*. at 2. He was wearing gear commonly associated with BASE jumping. *Id*. A Park Service employee ascended 50 feet up the tree and rescued Defendant. Defendant was arrested and charged with violating 36 C.F.R. § 2.17(a)(3)[1] (delivering a person by parachute or other airborne means) and 36 C.F.R. § 2.34(a)(4) (creating a hazardous conviction). The case proceeded to bench trial on August 9, 2017 before the U.S. Magistrate Judge Michael J. Seng. *Id*.

At trial, the United States did not offer evidence in its case in chief that Defendant lacked a permit to BASE jump or faced an emergency. The United States' trial brief erroneously indicated, without support/citation, that the 36 C.F.R. § 2.17(a)(3) statute had four elements: (1) the defendant delivered a person or object; (2) by parachute, helicopter or other airborne means; (3) without emergency involving public safety or serious property loss; and (4) not pursuant to the terms and conditions of a permit. (Doc. 7 at 3).

B. <u>The Magistrate Judge Denied Defendant's Rule 29 Motion</u>

At the conclusion of the trial, Defendant made a Rule 29 motion. Defendant argued that the United States had failed to meet its burden beyond a reasonable doubt as to the airborne means charge (36 C.F.R. § 2.17(a)(3)) because the government had failed to prove that Defendant lacked a permit for his activities or was facing an emergency. The Magistrate Judge denied the Rule 29 motion, but also indicated he would review the cases cited by Defendant.

---

[1] Title 36, Code of Federal Regulations, Section 2.17(a)(3) prohibits: "Delivering or retrieving a person or object by parachute, helicopter, or other airborne means, *except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit*." 36 C.F.R.§ 2.17(a)(3) (emphasis added).

UNITED STATES' ANSWERING BRIEF     2

National Park Service legal intern John Preis, who represented the United States in this case, suggested to the magistrate judge that he could take judicial notice of the past cases the judge had heard in Yosemite in finding that Yosemite does not permit BASE jumping. (Transcript of Bench Trial, Doc. 20, at 58.) Defense counsel objected to the request for judicial notice, arguing that Yosemite had numerous different permits for numerous different activities. *Id.* Defense counsel urged that the government should have put on evidence of the illegality of BASE jumping in Yosemite if that was the government's position. *Id.*

C. <u>The Magistrate Judge Later Issued A Written Order, Finding Defendant Guilty of Both Counts</u>

On September 26, 2017, the Magistrate Judge issued an order and judgment, finding Defendant guilty of both counts. In a lengthy discussion, the Magistrate Judge held that 36 C.F.R. § 2.17(a)(3) did not require the government to prove the absence of a permit as an element of the offense. (Order 5-12).

In a footnote in the early portion of the order the Magistrate Judge noted that it was not going to wade into the debate as to whether Yosemite's ban on BASE jumping should be continued. The judge noted that defendant had given an interview to the Fresno Bee newspaper on the issue and included a link to the news story. The Order also included citations to other publically available online National Park Service materials, including safety regulations, which stated that BASE Jumping is prohibited in Yosemite. (Order at 11).

Defendant was later sentenced to 24 months of probation, 300 hours of community service, a $4,980.00 fine, and two mandatory $10 Special Assessments. (Doc. 13). On December 5, 2017, after a hearing, Defendant was ordered to pay $492.30 in restitution. (Doc. 18)

IV.   **ARGUMENT**

A. **The Magistrate Judge properly concluded that 36 C.F.R. § 2.17(a)(3) does not require the government to prove as an element of the offense the absence of an emergency or permit**

In its order, the Magistrate Judge ruled that the government was not required to offer evidence that the Defendant lacked a BASE jumping permit as an element of the offense, 36 C.F.R. § 2.17(a)(3). (Order 5-12). This question appears to be one of first impression for the Ninth Circuit. The government could locate only one other district court to address this issue directly. In that case, the court ruled that the lack of a permit was an element of 36 C.F.R. § 2.17(a)(3) that the government needed to prove

beyond a reasonable doubt. *United States v. Oxx*, 56 F.Supp.2d 1214 (D.Utah 1999). One other district court in issuing its findings that defendant violated 36 C.F.R. § 2.17(a)(3) mentioned that it was "undisputed" that the defendant lacked a permit. *See United States v. Carroll*, 813 F.Supp 698 (E.D.Mo. 1993). It was unclear from the opinion, however, which party offered that evidence. *Id.*; (Order at 6).

      a.  <u>Looking to the statutory language and caselaw, the Magistrate Judge properly concluded that the exception was an affirmative defense, not an element</u>

In *McKelvey v. United States*, the Supreme Court held that an indictment founded on a general provision defining the elements of an offense need not "negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere. *McKelvey v. United States*, 260 U.S. 353, 357 (1922) ("[I]t is incumbent on one who relies on such an exception to set it up and establish it."). *McKelvey* was an assault case on Federal land in Idaho involving a dispute between cattle ranchers (defendants) and three sheep herders (victims). The cattle ranchers, angry that the sheep herders were running sheep across an area they deemed to be better suited for their cattle, ultimately shot one of the sheep herders, threatened to finish him, and put the others in terror. *Id*. The defendants were charged with assault.

The statute at issue in *McKelvey* prohibited individuals on Federal lands from interfering with other individuals "free passage or transit" over/through those lands. *Id*. The statute contained an exception. The exception stated that the prohibition on such conduct would not apply to persons who had "gone upon, improved or occupied said lands under the land laws of the United States." *Id*. That statute provided:

> "[N]o person, by force, threats intimidation, or by any fencing or inclosing or any other unlawful means shall prevent or obstruct . . . any person from entering upon . . . any tract of public land . . . or shall prevent or obstruct free passage or transit over or through the public lands: *provided, this section shall not be held to affect the right or title of persons, who have gone upon, improved or occupied said lands under the land laws of the United States, claiming title thereto, in good faith.*

*Id*. at 356 (emphasis added).

Defendant *McKelvey* moved to dismiss the indictment against him on grounds that the indictment contained no showing that he did not fall within the exception. *Id*. In other words, he argued that the indictment should be dismissed because it did not contain an essential allegation against him:

that he did *not* fall within the exception to criminal liability as set forth in the statute. The Supreme Court disagreed. The Supreme Court reasoned that an indictment that sets forth the elements of the offense need not negate the application of an exception "made by proviso or other distinct clause, whether in the same section and elsewhere. *Id*. The Court continued that "it is incumbent on one who relies on such an exception to set it up and establish it." *Id*.

The Ninth Circuit has followed this reasoning in numerous cases. *See*, *e.g.*, *United States v. Green*, 962 F.2d 938, 941 (9th Cir. 1992) (*quoting United States v. Guess*, 629 F.2d 573, 576 (9th Cir.1980); *United States v. Freter*, 31 F.3d 783, 788 (9th Cir. 1994); *United States v. Hester*, 719 F.2d 1041, 1042 (9th Cir. 1983); *United States v. Henry*, 615 F.2d 1223, 1234-35 (9th Cir. 1980); *Hockenberry v. United States*, 422 F.2d 171 (9th Cir. 1970). In holding that the lack of a permit was not an element of the offense, the Magistrate Judge looked to many of these cases. The cases support the Magistrate Judge's conclusion that the "without emergency or permit" language of 36 C.F.R. § 2.17(a)(3) is not an element of the offense.

In *Hockenberry v. United States*, the Ninth Circuit addressed the question of whether certain exclusionary language, "without just cause or excuse," was an element of a federal assault statute that needed to be proven by government beyond a reasonable doubt. (Order at 9) (*citing Hockenberry v. United States*, 422 F.2d 171 (9th Cir. 1970)). In that case, the defendant was convicted of assault with a deadly weapon at the Federal Correctional Institution at Lompoc, California. *Id*. at 172. He stabbed another inmate with a knife. *Id*. The statute at issue, 18 U.S.C. § 113[2], criminalized assault with a deadly weapon "without just cause or excuse." *Id*. at 173. The indictment did not recite that the assault was "without just cause or excuse." Defendant was convicted. On appeal, the defendant argued that the conviction should be reversed because the indictment omitted an essential element of the offense. *See id*. The Ninth Circuit disagreed. The court opined that "it was not necessary to recite that the assault was 'without just cause or excuse." *Id*. The court continued, "if there was such cause or excuse, the defendant could show it." *Id*. "The government did not have to burden of pleading or proving its

---

[2] The statute provided, "Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault, shall be punished as follows . . . (c) Assault with a deadly weapon, with intent to do bodily harm, *and without just cause or excuse*, by fine of not more than $1,000 or imprisonment for not more than five years, or both." *Id*. (emphasis added).

absence." *Id.*

In *United States v. Freter*, the Ninth Circuit analyzed a federal hazardous waste statute, 42 U.S.C. § 9603(b)(3). *United States v. Freter*, 31 F.3d 783, 788 (9th Cir. 1994). In that case, the defendant was convicted by jury before District Judge Oliver W. Wanger for failing to notify federal authorities of a release of hazardous substances at a facility he controlled. *Freter*, 31 F.3d at 784. The statute at issue, 42 U.S.C. § 9603(b)(3)[3], criminalized the failure to notify authorities of any release of hazardous substances, "other than a federally permitted release." *Id.* at 173. At trial, the government did not offer any evidence that the defendant's release of chemicals was not a "federally permitted release." *Id.* The defendant appealed his conviction. The Ninth Circuit affirmed.

The court held that the exception for a federally permitted release was an affirmative defense. *Id.* at 788. In so holding, the court noted the "well-established rule . . . that a defendant who relies upon an exception to a statute made by a proviso or distinct cause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception." *Id.* (citations omitted). The defendant urged that the well-established rule did not apply to his case because the exception was contained in the same sentence that contained the other elements of the offense. *Id.* at 788. The Ninth Circuit explicitly rejected that argument. *Id.* ("The doctrine we apply, however, is not limited to statutes in which the relevant language is in a separate section . . . or in which the relevant language is in a separate sentence from that describing the element so the crime . . . ."). Finally in *Freter*, the Ninth Circuit noted that where a statutory prohibition is broad and an exception is narrow, it is more probable that the exception is an affirmative defense." *Id.* at 788 (*citing United States v. Durrani,* 835 F.2d 410, 421 (2d Cir.1987); *United States v. Mayo*, 705 F.2d 62, 75 (2d Cir.1983) (noting that an affirmative defense is one that "'does not serve to negative any facts of the crime.'")).

The court in *Freter* cited to another instructive case, *United States v. Chodor*, 479 F.2d 661, 663-64, n.2 (1st Cir.), cert denied, 414 U.S. 912 (1973). In that case, defendant was convicted under a statute that prohibited individuals from having in their "possession or custody, *except under authority from the*

---

[3] The statute provided, "Any person . . . in charge of a facility from which a hazardous substance is released, *other than a federally permitted release*, . . . who fails to notify immediately the appropriate agency" may be subject to penalties. 42 U.S.C. § 9603(b)(3)(emphasis added).

UNITED STATES' ANSWERING BRIEF                    6

*Secretary of the Treasury or other proper officer*, . . . [certain treasury instruments].") In that case, the defendant was convicted of possessing a suitcase full of $133,000 in uncut sheets of counterfeit $10 bills. *Id*. at 663. On appeal, the defendant urged that his conviction should be overturned because the government failed to establish the defendant possessed the currency "without authority from the Secretary of the Treasury." The First Circuit disagreed, citing to *McKelvey* and other cases.

In another example arising from the Eastern District of California, the Ninth Circuit agreed with the District Judge that in a federal firearms statute criminalizing possession of a machine gun, the statutory exception, "[except] lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect" was not an element of the offense, and was instead an affirmative defense. *United States v. Gravenmeir*, 121 F.3d 526, 528 (9th Cir. 1997).

Additionally, the Ninth Circuit held, in analyzing a conviction under the Federal Enclaves Act (18 U.S.C. § 1152.1) which provides, among other things, for the prosecution of crimes committed in Indian country by non-Indians against Indians, that defendant's non-Indian status was not an element of the offense. *United States v. Hester*, 719 F.2d 1041, 1042 (9th Cir. 1983). Following *McKelvey*, the Court reasoned that it was "far more manageable for the defendant to shoulder the burden of producing evidence that he is a member of a federally recognized tribe than it is for the Government to produce evidence that he is not a member of any one of the hundreds of such tribes."

      b. <u>Supporting the Magistrate Judge's conclusion is the fact that the exception was narrow and provided an "escape hatch" to the broader prohibition against BASE jumping</u>

The Ninth Circuit has described the Circuit's *McKelvey* line of cases as applying to statutes that contain an "escape hatch exception." *United States v. Hui Hsiung*, 778 F.3d 738, 756-757 (9th Cir. 2015). The language at issue in the present case is an escape hatch. In the present case, the language "except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit" carves out an exception, an escape hatch, from a general prohibition of individuals delivering persons or objects by parachute or other airborne means. *See also Freter*, 31 F.3d at 788 (where a statutory prohibition is broad and an exception is narrow, it is more probable that the exception is an affirmative defense).

The above cases support the Magistrate Judge's conclusion that the language of 36 C.F.R.

§ 2.17(a)(3), "except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit" is not an element of the offense, but rather a narrow exception and escape hatch.  That exception is quite similar to numerous other provisions the Ninth Circuit has deemed not to be elements of the offenses at issue.  *See, e.g.*, *Hockenberry*, 422 F.2d 171 ("without just cause or excuse," not an element of a federal assault statute); *Freter*, 31 F.3d 783 ("other than a federally permitted release" not an element of federal hazardous waste statute); *Gravenmeir*, 121 F.3d at 528 ("[except machine guns] lawfully possessed before the date this subsection takes effect" not an element of federal firearms statute); *Hester*, 719 F.2d at 1042 ("non-Indian status" not element of the Federal Enclaves Act); *see also Chodor*, 479 F.2d at 663-64, n.2 (according to the First Circuit, "except under authority from the Secretary of the Treasury or other proper officer" not an element of counterfeiting statute).  Indeed, the Order in this case concluded that the exception in this case was narrow, while the prohibition (against delivering persons or property by airborne means) was broad.  (Order at 10-11.)

    c. <u>Further supporting the Magistrate Judge's conclusion was the fact that Defendant was in the best position to prove the existence of an emergency or permit</u>

  Finally, the Magistrate Judge concluded that the defendant would have been in the best position to prove the existence of a permit.  (Order at 11.)  The Magistrate Judge disagreed with the District Judge in *Oxx*, who concluded that the government could have easily called a National Park Service representative in that case to disprove defendants' possession of a permit.  *Id*.  The Magistrate Judge, taking judicial notice[4] of Yosemite's general prohibition on BASE jumping at Yosemite, found that such testimony was not required and that Defendant, if he were someone the exception to the rule, could have easily come forth with such evidence.  *Id.*  The government agrees that although the National Park Service could conduct a search for Defendant's permit, it would be easier for Defendant himself to

---

[4] There is no error in the Magistrate Judge, after request from government counsel, and in preparing its ruling, having taken judicial notice of publically available National Park Service documents.  Under Fed.R.Evid. 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).  This may include facts which might constitute an element of the crime charged.  *Gold v. United States*, 378 F.2d 588, 591–92 (9th Cir. 1967).  This is especially so in this case, where the Magistrate Judge assigned to the Yosemite Courthouse could be expected to be familiar with rules and regulations concerning Yosemite.  Accordingly, even if this Court determines that the exception contained in § 2.17(a)(3) is an element, the magistrate's taking of judicial notice sufficiently established it and the Court should uphold the defendant's conviction.

establish that he fell within the exception. *See Gravenmeir*, 121 F.3d at 528 ("That the government could 'prove the negative' in this case, however, does not mean that it would be easier for the government to do so").

More importantly, if the exception is an element of the offense, the government would need to do disprove the entirety of the exception. The exclusionary clause "without emergency involving public safety or serious property loss, and not pursuant to the terms or conditions of a permit" must be read as a whole and each word must be given its due credit. *Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th Cir.1991) ("It is an accepted canon of statutory interpretation that we must interpret the statutory phrase as a whole, giving effect to each word and not interpreting the provision so as to make other provisions meaningless or superfluous."). The government's task would involve more than searching to see whether defendant had a permit. The government would also need to prove that there was no emergency involving public safety or serious property loss. The evidentiary challenges would mind-boggling. The challenges would be similar to those found by the Ninth Circuit to be better shown by defendant, such as that a prison assault was not "without just cause or excuse" or that a defendant was a "non-Indian" who committed a crime against "Indians." *See Hockenberry*, 422 F.2d at 171 ("If there was such cause or excuse [for defendant stabbing another inmate], the defendant could show it"); *Hester*, 719 F.2d at 1042 ("It is far more manageable for the defendant to shoulder the burden of producing evidence that he is a member of a federally recognized tribe than it is for the Government to produce evidence that he is not a member of any one of the hundreds of such tribes.").

Neither opinion in *Oxx* or *Carroll* addressed this issue. In *Oxx*, the District Court began the opinion by noting that the exclusion of 2.17(a)(3) had two parts: "except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit." *Oxx*, 56 F.Supp.2d at 1216. Yet later in the opinion, the court stopped discussing the emergency exception altogether. For the remainder of the opinion, the court focused solely on the permit exception. *See id*. The court noted that the government had failed to establish the absence of a permit. *Id*. at 1218. The court then discussed *United States v. Durrani*, for the proposition that in determining whether an exception is an element of the offense, the court should look to the "parties' relative ability to present evidence on the issue," then concluded that the government would be in the best position to demonstrate

the lack of a permit. *Id*. at 1220. Yet the court did not explain who would be in a better position to disprove the lack of an emergency (it would seem obvious the defendant would be in such a position), and how that relative ability affected the exclusion clause as a whole. *See id*. The Court in *Carroll* also appears to have not addressed that issue.

Thus, in looking at the clause as a whole, "except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit," it appears obvious that the defendant would be in the best position to disprove the entirety of the exception, and that, thus, the language is an affirmative defense and not an element of the offense.

**B. The Magistrate Judge did not err in not recusing himself *sua sponte* from Defendant's case**

Defendant next challenges the ethics of the Magistrate Judge and his decision not to recuse himself from Defendant's case. Defendant focuses on the interview that Defendant gave to the Fresno Bee for a story published on August 10, 2017, the day after the bench trial, regarding his case. In the story, Defendant admitted to BASE jumping in Yosemite at least 20 times in the past five years, knew BASE jumping at Yosemite was not allowed, and hoped that his case will lead to legislation that will allow BASE jumping in Yosemite. (Brief at 14-15). The day after the trial, the Fresno Bee published the story. *Id*. In a single footnote in the 12-page Order, the Magistrate Judge indicated that he reviewed the story and that the court was not going to do anything other than serve its role to determine whether the elements of the alleged offenses were established beyond a reasonable doubt. (Order at 3.)

On appeal, Defendant argues that after the Judge read the article, he should have stopped reading the article, informed the parties that he had seen the article, and should have recused himself. Defendant urges that 28 U.S.C. § 455(a) "imposes an affirmative duty upon judges to recuse themselves . . . 'where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonable be questioned." (Motion at 13).

The defendant's position makes little sense as applied to the facts of this case. As an initial matter, this was a self-created problem: the defendant gave an interview to a newspaper and chose to comment on his past experiences, his knowledge that BASE jumping was not allowed, and to advocate his position that BASE jumping be legalized. None of these pieces of information would have been in the public domain had the defendant not chosen to put them there. Nor did the defendant or counsel

report to Magistrate Judge that such a story would be appearing or warn the Magistrate Judge against reviewing it.

The defendant appears to argue that automatic recusal is the only option, but where allegedly improper contact is harmless, as it was here, recusal is not necessary. *See Godoy v. Spearman,* 861 F.3d 956, 967–68 (9th Cir. 2017) (*en banc*) ("Harmlessness in [the context of improper contact with the trier of fact] means "that there is no reasonable possibility that the communication ... influence[d] the verdict.").

The Magistrate Judge plainly disclosed, in his written order, that he had reviewed the story. (Order at 3). The Judge expressly stated that he was not going to use Defendant's case (or news story) to provide an endorsement of BASE jumping or a condemnation of the regulation prohibiting it. (Order at 3). Instead, he wrote, "[t]he Court's role is to determine if the elements of the alleged offenses have been established . . . ." *Id.* The Magistrate Judge did not incorporate any of Defendant's admissions into his order. *See id.* It is clear from the Order that any alleged impropriety that occurred by the judge seeing or continuing to read the news story was harmless. Thus, Defendant's argument that the Magistrate Judge should have recused himself after reading the Fresno Bee article should be rejected.

## V. CONCLUSION

Defendant's convictions should be affirmed. The Magistrate Judge properly concluded that 36 C.F.R. § 2.17(a)(3) can be proven beyond a reasonable doubt without the government disproving that the defendant acted "without emergency involving public safety or serious property loss, and not pursuant to the terms or conditions of a permit."

The defendant's claim that the Magistrate Judge should have recused himself is without merit. There is no reasonable possibility that the Judge's reading of the defendant's interview, if at all improper, affected the verdict in this case.

Dated: February 23, 2018

McGREGOR W. SCOTT
United States Attorney

By: /s/ JEFFREY A. SPIVAK
JEFFREY A. SPIVAK
Assistant United States Attorney