HEATHER E. WILLIAMS, CA SBN #122664
Federal Defender
REED GRANTHAM, CA SBN #294171
Assistant Federal Defender
Office of the Federal Defender
2300 Tulare Street, Suite 330
Fresno, CA  93721-2226
Telephone: (559) 487-5561
Fax: (559) 487-5950

Attorney for Defendant
AUSTIN CAREY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>vs.<br><br>AUSTIN CAREY,<br><br>              Defendant. | District Court Case No. 1:17-cr-00252-LJO<br>(Magistrate Case No. 6:16-mj-00088-MJS)<br><br>**APPELLANT'S REPLY BRIEF**<br><br>Date:  TBD<br>Time: TBD<br>Judge: Hon. Lawrence J. O'Neill |

Defendant-Appellant Austin Carey hereby files his reply to the government's answering brief. For the reasons set forth below and in Mr. Carey's opening brief, this Court should vacate Mr. Carey's convictions and enter judgments of acquittal. Alternatively, this Court should remand the matter to a different magistrate judge for retrial.

## I.     ARGUMENT

### A.     The Government Ignores Binding Supreme Court Precedent Holding that the Prosecution Must Plead and Prove Statutory Language Incorporated in the Enacting Clause of a Statute Beyond a Reasonable Doubt

The United States Supreme Court in *United States v. Vuitch* conclusively held that "when an exception is incorporated in the enacting clause of a statute, the burden is on the prosecution to plead and prove that the defendant is not within the exception." 402 U.S. 62, 70 (1971). As set forth in Mr. Carey's Opening Brief, the statutory language of 36 C.F.R. § 2.17(a)(3) mirrors—both in substance and in structure—the statutory language that the *Vuitch* Supreme Court

1   concluded was an element of the offense that the prosecution was required to plead and prove
2   beyond a reasonable doubt. *See* Dkt. # 25 at 6-7. Despite the fact that *Vuitch* has not been
3   overruled and remains binding Supreme Court law, the government's Answering Brief contains
4   no citation to *Vuitch* and neglects to mention the defense's primary contention that the permit
5   language in section 2.17(a)(3), like that in *Vuitch*, is so situated as to constitute an element of the
6   offense that the government must prove beyond a reasonable doubt.

7         Instead, the government premises its argument on a 1922 Supreme Court case which
8   held—in conflict with *Vuitch*—"that an indictment . . . need not negative the matter of an
9   exception made by a proviso or other distinct clause, whether in the same section or elsewhere,
10  and that it is incumbent on one who relies on such an exception to set it up and establish it."
11  *McKelvey v. United States*, 260 U.S. 353, 357 (1922). The broad language of *McKelvey* that the
12  government relies upon is irreconcilable with the Supreme Court's 1971 holding in *Vuitch*, that
13  "an exception . . . incorporated in the enacting clause of a statute" must be pleaded and proven
14  by the prosecution. *Id.*; *Vuitch*, 402 U.S. at 70. Accordingly, *Vuitch* limited *McKelvey* to the
15  extent that exceptions or clauses that are incorporated in the enacting clause of the statute, unlike
16  exceptions or clauses not so incorporated, must be treated as elements of the offense that the
17  government bears the burden of proving beyond a reasonable doubt. *Vuitch*, 402 U.S. at 70.
18  Instead of addressing the impact of *Vuitch*, the government proposes an expansive reading of
19  *McKelvey* that would effectively flip the burden of proof to the defendant with regard to any
20  "exception made by a proviso or other distinct clause" contained within the enacting clause of a
21  statute, in direct contravention of *Vuitch*. Such a reading misunderstands the scope of *McKelvey*
22  in light of *Vuitch* and runs afoul of the Supreme Court's jurisprudence regarding due process, the
23  burden of proof, and the presumption of innocence. *See In re Winship*, 397 U.S. 358, 364 (1970):
24  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) ("[N]o person shall be made to suffer the onus of
25  a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a
26  trier of fact beyond a reasonable doubt of the existence of every element of the offense.").
27  Although the government cites to several Ninth Circuit cases applying *McKelvey*, because the
28  abrogation of *McKelvey* by *Vuitch* was never raised or addressed by the Ninth Circuit in those

cases, they are inapposite here. Accordingly, this Court is not bound by such cases and must look to the controlling precedent set forth in *Vuitch* to determine whether the permit language in section 2.17(a)(3) is incorporated in the enacting clause of the statute to determine whether the permit language of section 2.17(a)(3) constitutes an element of the offense.

Additionally, while the government cites to several Ninth Circuit cases that follow *McKelvey*, the government neglects other Ninth Circuit cases where the Ninth Circuit declined to follow *McKelvey*. Notably, in *United States v. King*, the government charged a physician with conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), which provided that it shall be unlawful for any person knowingly or intentionally "(1) to . . . distribute, or dispense, or possess with intent to . . . distribute, or dispense, a controlled substance." 587 F.2d 956, 962 (9th Cir. 1978). However, a medical exception to section 841(a)(1) provided that "[p]ersons registered by the Attorney General under this subchapter to . . . distribute . . . or dispense controlled substances are authorized to possess, . . . distribute, or dispense such substances to the extent authorized by their registration and in conformity with the other provisions of this subchapter." *Id.* at 762-63. At trial, the government failed to introduce any evidence that the defendant's conduct was not within the medical exception authorized by statute. On appeal from the underlying conviction, the Ninth Circuit held that "the Government should have been required to prove the nonapplicability of the medical exception beyond a reasonable doubt." *Id.* at 964.

The Ninth Circuit's holding in *King* was further supported by the Court's holding three years earlier in *United States v. Black*, 512 F.2d 864 (9th Cir. 1975). *Black* likewise involved a medical exception to section 841(a)(1) for "practitioners to lawfully dispense controlled substances." *Black*, 512 F.2d at 867. In *Black*, at the conclusion of the government's case, the defendant moved for a judgment of acquittal on the grounds that the government failed to prove that the prescriptions written in the case were not written "for a legitimate medical purpose in the usual course of his professional practice" as set forth in the medical exception. *Id.* The district court denied defendant's motion and the matter was appealed to the Ninth Circuit. *Id.* In reversing the district court's denial of the defendant's motion for judgment of acquittal, the Ninth

1    Circuit held that the government had to prove beyond a reasonable doubt the nonapplicability of

2    the medical exception. *Id.* at 972; *see also King*, 587 F.2d at 964 (summarizing *Black*'s holding

3    that "[Black] [could] not be found guilty of violation of s 841(a)(1) unless the trier of fact

4    determines beyond a reasonable doubt that Black's conduct was not within the medical exception

5    authorized by statute"). In so holding, the Court concluded: "As due process precludes

6    conviction except upon proof beyond a reasonable doubt of every element of the crime, and as

7    the court below clearly did not make a determination on one element of the crime, i.e., lack of

8    authorization under the medical exception, the judgment of conviction cannot stand." *Id.* at 872.

9        The government's attempts to apply the outdated and largely abrogated *McKelvey*

10   analysis is mistaken. *See United States v. Prentiss*, 256 F.3d 971, 979 (10th Cir. 2001) (overruled

11   on other grounds) ("*McKelvey*'s general provision/proviso dichotomy is only one interpretive aid

12   among several that should be applied in parsing statutes that define offenses."); *United States v.*

13   *Steele*, 147 F.3d 1316, 1319 (11th Cir. 1998) ("Both the *Vuitch* and the *McKelvey* rules are rules

14   of statutory construction . . . and as such they are useful when Congress has not made its intent

15   clear."). In this case, because the permit language of section 2.17(a)(3) is within the enacting

16   clause of the statute, *Vuitch* is controlling and that should be the end of the analysis. Nonetheless,

17   even if this Court determines that the permit language of section 2.17(a)(3) is not within the

18   enacting clause of the statute, requiring the multi-factor analysis conducted by the magistrate

19   judge in this case, the magistrate judge erred in applying the relevant factors. *See e.g., United*

20   *States v. Durrani*, 835 F.2d 410 (2d Cir. 1987) (to determine whether statutory language

21   constitutes an element of the offense the court reviews: (1) the text and structure of the statute in

22   question, (2) the legislative history of the statute, and (3) the parties' relative ability to present

23   evidence on the issue); *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997) (same);

24   *United States v. Shafi*, 252 F. Supp. 3d 787, 793 (N.D. Cal. 2017) (same).

25       Although the government declined to provide any analysis as to steps one and two, the

26   government argues that a defendant charged under section 2.17(a)(3) would be in the best

27   position to provide evidence as to the existence of a permit, and that because the prohibition of

28   section 2.17(a)(3) is broad and the exception narrow, the burden of proof should fall to the

defendant. The government's arguments are unavailing on these points.

First, as set forth in Mr. Carey's Opening Brief, there are numerous reasons why the government is better situated to introduce such evidence: the government operates the permitting system, the government has ready access to its own records, the government can call applicable permit custodians to testify to the existence or non-existence of a permit, and the government is best situated to be the ultimate arbiter as to whether such a permit was issued. The ease with which the government could introduce such evidence must be counter-balanced by the attendant difficulties of the defendant introducing such information. Indeed, in a case where the defendant exercises the right to remain silent and does not testify, the only way such information could be admitted is by subpoenaing the government's own records and custodians. In addition to arguing that the defendant is better situated to introduce permit evidence, the government argues that whichever party bears the burden of introducing permit evidence would also bear the burden of introducing evidence as to whether the aerial delivery involved an emergency involving public safety or serious property loss. As a preliminary matter, Mr. Carey has not raised the issue on appeal as to whether the language in section 2.17(a)(3) relating to emergencies involving public safety and property loss constitutes an element of the offense. Indeed, Mr. Carey's only contention on appeal is that the government bore the burden of establishing that he did not engage in the conduct without a permit. As set forth above, requiring the government to prove as an essential element of the offense the absence of a permit is in keeping with controlling Supreme Court and Ninth Circuit case law. *See Vuitch*, 402 U.S. at 70; *United States v. King*, 587 F.2d 956, 962 (9th Cir. 1978); *United States v. Black*, 512 F.2d 864 (9th Cir. 1975). However, even if the entire statutory phrase were to be read together, the government's contention that the defendant is best situated to introduce evidence regarding "emergencies involving public safety or serious property loss," is nonsensical. Indeed, the government appears to be implying that an individual (often, a tourist) in Yosemite National Park (a federal national park with federal rangers, law enforcement, housing, and infrastructure) would be in a better position to have access to information relating to "emergencies involving *public* safety or serious property loss." In fact, reading the phrase in its entirety is further evidence that the burden is

more appropriately placed on the party that actually has access—through its numerous rangers and law enforcement officers, its radio capabilities, its dispatch operators, and its unique knowledge of the Park—to such information. Although the government claims that such a challenge would be "mind-boggling" for the government, it would be even more inconceivable that a defendant in a criminal case in Yosemite National Park could obtain, verify, and validate information regarding an emergency involving public safety and serious property loss. Such information is surely best adduced by the federal authority that is responsible for managing and responding to any and all *public* emergencies.

The government also argues that the burden is best placed on the defendant to prove the permit issue because the statutory prohibition of section 2.17(a)(3) is broad, while the exception is narrow. Such a position appears to contradict the government's previous argument, which, in effect, points out that the statutory exceptions to section 2.17(a)(3) are actually quite broad, such that aerial delivery appears to not be prohibited in three rather expansive circumstances: when the individual has a permit, when the individual engages in the conduct during an emergency involving public safety, or when the individual engages in the conduct during an emergency involving serious property loss. The broadness of the exceptions contained within section 2.17(a)(3) stands in stark contrast to the narrowness of the exceptions highlighted by the government's cases cited in support of this proposition. *See* Dkt. 26 at 8. Moreover, the Ninth Circuit has held that the government bears the burden of proving even a narrow exception to a broad prohibition. *See United States v. King*, 587 F.2d 956, 962 (9th Cir. 1978); *United States v. Black*, 512 F.2d 864 (9th Cir. 1975).

As set forth above and in Mr. Carey's Opening Brief, the appropriate analysis in this case is whether, in accordance with the dictates of *Vuitch*, the statutory language of section 2.17(a)(3) is incorporated within the enacting clause of the rest of the statute. If so, "the burden is on the prosecution to plead and prove that the defendant is not within the exception." *Vuitch*, 402 U.S. at 70. In the event that this Court does not follow the mandate of *Vuitch*, or concludes that the permit language is not incorporated within the enacting clause of section 2.17(a)(3), the three-part analysis employed by several circuits to determine whether statutory language constitutes an

element of the offense is appropriate. Applying such an analysis, all factors lean in favor of a finding that the permit language of section 2.17(a)(3) constitutes an element of the offense that the government was required to prove beyond a reasonable doubt.

> **B.**    **The Magistrate Judge's Decision to Read Prejudicial and Inflammatory Extrajudicial News Media Regarding Mr. Carey After the Close of Evidence and Before a Finding of Guilt and to Not Notify the Parties or Recuse Himself Was Error**

In response to Mr. Carey's claim that the magistrate judge in this case erred when he decided to read particularly prejudicial and inflammatory extrajudicial news media regarding Mr. Carey and his case, and further decided not to notify the parties or to otherwise recuse himself, the government makes two arguments. Significantly, the government makes no argument that the magistrate judge's actions did not fall within the ambit of 28 U.S.C. § 455(a), which requires recusal "in any proceeding in which [a judge's] impartiality might reasonably be questioned." Instead, the government claims that because Mr. Carey appears to have participated in the interview willingly, this fact should vitiate his argument that the judge in this case erred by failing to notify the parties and recusing. Second, the government argues that any error resulting from the magistrate judge's error was harmless.

In support of the government's first claim, no citations are provided. The thrust of the government's argument appears to be that a criminal defendant should not be permitted to give interviews or otherwise exercise their First Amendment rights without first notifying the judge/trier of fact of his intent to do so. No such rule exists and any suggestion that Mr. Carey's recusal claim should be nullified simply because he may have chosen to give an interview is absurd. The government has cited to no case where the mere fact that the defendant participated in an interview that resulted in pretrial or trial publicity should somehow deprive that defendant of a fair and impartial trier of fact. U.S. CONST. amend. VI. In contrast, courts have unequivocally and repeatedly reaffirmed that "the guarantee of an impartial jury . . . is vital to the fair administration of justice." *Dietz v. Bouldin*, 136 S.Ct. 1885, 1893 (2016); *Mattox v. United States*, 146 U.S. 140, 149 (1892) (holding that due process does not tolerate "any ground of suspicion that the administration of justice has been interfered with by external influence").

1   In this case, the magistrate judge was confronted with a news article that purportedly

2   contained admissions by Mr. Carey on matters directly related to the case that was pending

3   before the magistrate judge. Although the government attempts to frame the defense position as

4   requiring "automatic recusal" when a magistrate judge sitting as a trier of fact is exposed to such

5   prejudicial and inflammatory material regarding a defendant before him, that is not the defense's

6   position. As noted in Mr. Carey's Opening Brief, the magistrate judge, upon being confronted

7   with the news article pertaining to Mr. Carey, was obligated—as any trier of fact would be—to

8   notify of the parties of the contact and to allow the parties to determine the impact of the

9   exposure. *See* Dkt. # 25 at 22. Such a procedure comports with the Ninth Circuit's model

10  instruction to jurors, sitting as triers of fact, who "happen to read or hear anything touching on

11  this case in the media," and who are instructed to "turn away and report it . . . as soon as

12  possible." *See* Ninth Circuit Manual of Model Criminal Jury Instructions 1.8 Conduct of the

13  Jury.

14  The government's second argument is that even if the magistrate judge was exposed to

15  the prejudicial and inflammatory news article, a new trial is not warranted if the government can,

16  after the fact, demonstrate that the magistrate judge's actions were harmless. In support of this

17  position, the government cites to *Godoy v. Spearman*, 861 F.3d 956 (9th Cir. 2017) (en banc).

18  However, the harmlessness standard articulated in *Godoy* applies when a court is "faced with

19  allegations of improper contact between a juror and an outside party," and has no apparent

20  application in the section 455(a) context. *Id.* at 959. The government has not cited to any case

21  where recusal pursuant to section 455(a) was not required after the fact based on a subsequent

22  finding of "harmlessness." Nor would the application of a harmlessness standard make much

23  sense in the section 455(a) context, as section 455(a), unlike section 455(b)(1), does not require a

24  specific showing of bias or prejudice, but only that based on the facts of the case a reasonable

25  person would harbor doubts regarding the judge's ability to remain impartial. *See In re*

26  *McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004); *see also Liljeberg v. Health Servs.*

27  *Acquisition Corp.*, 486 U.S. 847, 859 (1988). Accordingly, in the section 455(a) context, "what

28  matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510

U.S. 540, 548 (1994). Since the "harmlessness" standard applied in *Godoy* has not been applied in the section 455(a) recusal context, this Court should reject the government's efforts to import such a standard.

The simple fact of this case is that the magistrate judge, sitting as a trier of fact, was unquestionably exposed to particularly prejudicial and inflammatory extrajudicial news media regarding a case that was pending before him. Such media contained the defendant's purported admissions to the conduct that was the subject of the case before the magistrate judge. Based on the magistrate judge's ruling, it is obvious that the magistrate judge read the article. The very first line of the news article specifically identified Mr. Carey and referred to the conduct at issue in the case pending before the magistrate judge. Such exposure necessitated, at the very least, that the magistrate judge notify the parties of the exposure, detail the extent of the exposure, and provide the parties an opportunity to determine whether recusal was required. No such notification occurred. Because a reasonable person with knowledge of the facts of this case would conclude that there was a basis upon which the magistrate judge's impartiality might be questioned, recusal was appropriate, and a new trial before a different magistrate is required.

## II.    CONCLUSION

For the reasons set forth above and in Mr. Carey's opening brief, the magistrate judge violated Mr. Carey's constitutional right to due process by shifting the burden of proof to Mr. Carey to prove an essential element of the offense. The magistrate judge further erred by failing to recuse himself after improperly reading and considering particularly prejudicial and inflammatory extrajudicial news media regarding Mr. Carey after the close of evidence and before a finding of guilt. Accordingly, this Court should vacate Mr. Carey's convictions and enter judgments of acquittal. Alternatively, this Court should remand the matter to a different magistrate judge for retrial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: March 9, 2018                     */s/ Reed Grantham*
                                        REED GRANTHAM
                                        Assistant Federal Defender
                                        Attorney for Defendant-Appellant
                                        AUSTIN CAREY