# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>AUSTIN CAREY,<br><br>Defendant-Appellant. | 1:17-cr-00252-LJO<br><br>ORDER ON APPEAL OF CONVICTION BY MAGISTRATE JUDGE<br><br>(ECF Nos. 25, 26, 27) |

## I. INTRODUCTION

Defendant-Appellant Austin Carey ("Carey") was found guilty of violating 36 C.F.R. § 2.17(a)(3), for delivering a person by parachute or other airborne means in Yosemite National Park, and 36 C.F.R. § 2.34(a)(4), for disorderly conduct, after a bench trial before a United States Magistrate Judge on August 9, 2017. ECF No. 9. On October 20, 2017, following the bench trial, Magistrate Judge Seng sentenced Carey to unsupervised probation for 24 months, a fine of $5,000, and 300 hours of community service. ECF No. 14.[1]

Carey appeals his conviction and sentence as well as the order and judgment denying

---

[1] On December 7, 2017, the Magistrate Judge filed a First Amended Judgment and Commitment removing a condition that ordered forfeiture. *See* Case No. 6:16-mj-88-MJS, ECF No. 19.

defendant's motion for acquittal pursuant to Federal Rule of Criminal Procedure Rule 29. ECF No. 17. Carey appeals his conviction on two grounds. ECF No. 25 at 1. First, Carey argues that his constitutional right to due process was violated because the Magistrate Judge improperly shifted the burden of proof to Carey for an essential element of the offense under § 2.17(a)(3). *Id.* Second, Carey argues that the Magistrate Judge erred by failing to recuse himself after "improperly reading and considering particularly prejudicial and inflammatory extrajudicial news media" after the close of evidence. *Id.* Carey requests that the Court vacate his conviction and enter a judgment of acquittal or alternatively remand to a different Magistrate Judge for retrial. *Id.* Carey filed an opening brief on February 2, 2018. *Id.* The United States filed its opening brief on February 23, 2018. ECF No. 26. Appellant filed a reply on March 9, 2018. ECF No. 27. For the reasons that follow, the Court affirms Carey's conviction.

## II. <u>BACKGROUND</u>

On November 20, 2016, the Yosemite Legal Office filed a two-count criminal complaint charging Carey with delivering a person or object by parachute, helicopter, or other airborne means in violation of 36 C.F.R. § 2.17(a)(3) (Count 1) and for disorderly conduct in violation of 36 C.F.R. § 2.34(a)(4) (Count 2). ECF No. 1. On December 6, 2016, Carey entered not guilty pleas on the two charges. ECF No. 4. The Magistrate Judge held a bench trial on August 9, 2017. ECF No. 20. The United States called only two witnesses: Yosemite National Park Ranger Owen Conlow who arrived at the scene to find Carey up in a tree near a parachute; and Justin Buzzard, a Park Service employee who assisted in removing Carey from the tree. Tr. at 4; 8-33; 34-43.

The following facts are garnered from the trial testimony of Ranger Conlow and Park employee Buzzard. ECF No. 20, ("Tr."). On September 6, 2016, Law Enforcement Rangers responded to reports of a person in a parachute hitting a tree in Yosemite near Housekeeping Camp. Tr. 5-6. Carey was found approximately 130-150 feet up in a tree near a parachute. The tree did not have branches on its lower 50-70 feet and was not climbable without special gear, which Carey was not found to possess. Tr. at 10; 31; 36; 40-41. Park employee Buzzard, a tree worker, was sent to rescue Carey using a special tree climbing system. Tr. 31-43. In addition, on and around Carey's person, a helmet, goggles, harnesses, a wing suit, and parachute was found,

2

identified by Ranger Conlow as gear typically used for BASE jumping[2] after conducting research. Tr. 8-20. Carey, after declining medical attention, was placed under arrest after being lowered from the tree. Tr. at 18.

The United States did not offer evidence in its case in chief that defendant lacked a permit to BASE jump or faced an emergency. ECF No. 26 at 2. The Defense did not call any witnesses and moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 after the rangers testified. ECF No. 25 at 3. The Magistrate Judge took the matter under submission and issued an order on September 9, 2017 finding Carey guilty on both counts. ECF No. 9.

### III. STANDARD OF REVIEW

This Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3402, which reads: "In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court in which the offense was committed." The district court's review of the Magistrate Judge's judgment is governed by the same standard as an appeal from a judgment of district court to the court of appeals. Fed. Crim. P. 58(g)(2)(D); *United States v. Stanton*, 501 F.3d 1093, 1099 (9th Cir. 2007). Accordingly, conclusions of law are reviewed de novo and factual findings are reviewed for clear error. *See United States v. Vesikuru*, 314 F.3d 1116, 1119 (9th Cir. 2002); *United States v. Mancia*, 720 F. Supp. 2d 1173, 1178 (E.D. Cal. 2010) ("A district court reviews a magistrate's factual findings for clear error and legal conclusions de novo…A claim of insufficient evidence is reviewed de novo").

### IV. DISCUSSION

Carey raises two issues on appeal. First, Carey argues that his constitutional right to due process under the Fifth Amendment was violated when the Magistrate Judge shifted the burden

---

[2] "The acronym in BASE jumping refers to the structures off of which enthusiasts of the extreme sport jump with the use of a chute: Buildings, Antennas (radio and television towers), Spans (bridges), and Earth (cliffs)." *United States v. Albers*, 226 F.3d 989, 991 (9th Cir. 2000).

of proof to him of an essential element of the offense under 36 C.F.R. § 2.17(a)(3).[3] Carey specifically argues that the government failed to introduce evidence concerning whether he had a permit and that as such the government has failed to prove an essential element of the offense under § 2.17(a)(3).[4] It is not disputed that the United States did not offer evidence that defendant lacked a permit to BASE jump at trial, however the United States argues that the permit exception in the statute was an affirmative defense, not an element of the offense. ECF No. 26 at 4. In addition, in its closing argument, the government argued it was appropriate to take judicial notice of the fact that BASE jumping is prohibited in Yosemite as proof that no permit could issue. Tr. 58. Second, Carey argues that the Magistrate Judge erred by failing to recuse himself after "improperly reading and considering particularly prejudicial and inflammatory extrajudicial news media" after the close of evidence and before a finding of guilt. ECF No. 25 at 1. The Court addresses each ground for appeal below.

### A. Burden of Proof Under 36 C.F.R. § 2.17(a)(3)

36 C.F.R. § 2.17(a)(3) prohibits "[d]elivering or retrieving a person or object by parachute, helicopter, or other airborne means, *except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit*." 36 C.F.R. § 2.17(a)(3) (emphasis added). This statute has been interpreted to prohibit BASE jumping. *United States v. Albers*, 226 F.3d 989, 994 (9th Cir. 2000) ("we conclude that BASE jumping is prohibited under § 2.17(a)(3)"). Whether the government must prove that Carey did not have a

---

[3] While Carey seeks acquittal of his conviction under 36 U.S.C. § 2.34(a)(4) as well, his argument on that ground is ancillary to the argument he makes concerning 36 U.S.C. § 2.17(a)(3), as he summarily states "the Legal Office's failure to meet its burden of proof as to the aerial delivery charge likewise invalidated a finding of guilt as to the disorderly conduct charge." ECF No. 25 at 3; *Id.* at 13 ("[a]s the disorderly conduct charge in Count 2 is predicated on Mr. Carey's guilt as to the aerial delivery charge in Count 1, a judgment of acquittal should enter for both counts").

[4] Both the defendant and the government focus their arguments on the permit exception rather than the emergency exception contained in §2.17(a)(3), as such the Court similarly focuses its discussion on the permit exception.

permit as an element of the offense is a question of law the Court reviews de novo. *United States v. Coutchavlis*, 260 F.3d 1149, 1156 (9th Cir. 2001) ("Whether the magistrate judge improperly shifted the burden of proof to the defendant is reviewed de novo"); *see United States v. Freter*, 31 F.3d 783, 788 (9th Cir. 1994).

"Because the legislature decides what elements constitute a crime, determining what is an element and what is not is a matter of statutory interpretation." *United States v. Shafi*, 252 F. Supp. 3d 787, 793 (N.D. Cal. 2017). To interpret a criminal statute, other courts have looked to three factors to help determine whether a statutorily created exception constitutes an element of an offense or an affirmative defense: "(1) the language and structure of the statute, (2) the legislative history of the provision, and (3) whether the defendant or the government 'is better situated to adduce evidence tending to prove or disprove the exception.'" *Id.* (quoting *United States v. McArthur*, 108 F.3d 1350 (11th Cir. 1997)); *see also United States v. Durrani*, 835 F.2d 410, 420 (2d Cir. 1987). Neither party disputes the applicability of this three factor analysis.[5] ECF No. 25 at 8; ECF No. 26 at 4, 8. Although Carey concurrently appears to argue that this case falls squarely within the in Supreme Court's holding in *United States v. Vuitch*, 402 U.S. 62, 63 (1971) and that "should be the end of the analysis" such that no further factors need be considered, he discusses these other factors as well. ECF No. 27 at 7. The Court does not believe the Supreme Court's holding in *Vuitch* ends the inquiry and like the Magistrate believes applying this three factor analysis and related statutory interpretation guides is the appropriate approach to determine if the permit exception in § 2.17(a)(3) is an element of the offense that the government had the burden of proving.

---

[5] While it does not appear that the Ninth Circuit has explicitly applied this three factor analysis, it routinely considers such factors in aiding in the interpretation of statutory exceptions. *See United States v. Guess*, 629 F.2d 573, 575-76 (9th Cir. 1980)*; United States v. Hester*, 719 F.2d 1041, 1042 (9th Cir. 1983); *Freter*, 31 F.3d at 788. The government's brief does not address the legislative history.

### 1. **Language And Structure of Statute**

The parties' central disagreement concerns the first factor of this analysis and whether the statutory structure indicates that the permit exception is an element of the offense such that government carries the burden of proof. Carey relies primarily on *Vuitch*, 402 U.S. at 63, and *United States v. Oxx*, 56 F. Supp. 2d 1214, 1215 (D. Utah 1999), to argue that the Magistrate Judge erred in holding the government did not have the burden to prove Carey did *not* have a permit. In *Vuitch*, a physician was indicted for producing and attempting to produce abortions in violation of a statute that provided:

> Whoever, by means of any instrument, medicine, drug or other means whatever, procures or produces, or attempts to procure or produce an abortion or miscarriage on any woman, *unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine*, shall be imprisoned in the penitentiary not less than one year or not more than ten years.

*Vuitch*, 402 U.S. at 67-68 (emphasis added). The general interpretative rule articulated in *Vuitsch* is that "when an exception is incorporated in the enacting clause of a statute, the burden is on the prosecution to plead and prove that the defendant is not within the exception." *Id.* at 70.

In contrast, the government cites to the interpretative principle articulated in *McKelvey v. United States*, 260 U.S. 353, 357 (1922), pronouncing the well settled rule "that an indictment or other pleading founded on a general provision defining the elements of an offense. . . *need not negative the matter of an exception made by a proviso or other distinct clause*, whether in the same section or elsewhere…" *Id.* (emphasis added). The relevant statute in *McKelvey* provided:

> That no person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct…any person from peaceably entering upon or establishing a settlement or residence on any tract of public land … or shall prevent or obstruct free passage or transit over or through the public lands: *Provided, this section shall not be held to affect the right or title of persons, who have gone upon, improved or occupied said lands under the land laws of the United States, claiming title thereto, in good faith.*

*Id.* at 356 (emphasis added). The Court in *McKelvey* held that "it is incumbent on one who relies on such an exception to set it up and establish it." *Id.* The government cites to a number of recent Ninth Circuit cases applying the general principle announced in *McKelvey*. ECF No. 26 at 5.

In response to the government's argument, Carey argues that *Vuitch* abrogated *McKelvey*. Carey essentially argues that because the statute's exception here is in the "enacting clause[,]" the *Vuitch* general rule applies and the *McKelvey* rule is irrelevant and inapplicable. ECF No. 25 at 10; ECF No 27 at 2-3. The enacting clause in criminal statute has been considered the clause which spells out the prohibited conduct. *See* J. E. Macy, Annotation, *Burden of averment and proof as to exception in criminal statute on which the prosecution is based*, 153 A.L.R. 1218 (originally published in 1944) (the enacting clause "has long been applied in criminal nomenclature to the prohibitory declaration of the statute" and with regard to the rule regarding exceptions in criminal statutes "the clause intended by the term may be said to be that which proscribes the offensive deed"). Contrary to Carey's assertion, this case does not fall "squarely within the holding of *Vuitch*." ECF No. 25 at 10. The Court agrees with the Magistrate Judge that unlike the statute in *Vuitch*, the permit exception in §2.17(a)(3) is subsequent to (rather than incorporated within) the enacting clause prohibiting delivery of a person by parachute. Accordingly, it does not clearly fit into the "general guide" announced in *Vuitch*.[6] The statutory structure here is more alike to the statutory exception in *McKelvey*, which was subsequent to and followed the pronunciation of the prohibited conduct. Furthermore, to determine whether an exception is in the enacting clause of a statute, the question is whether the exception "is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted." *United States v. Cook*, 84 U.S. 168, 173-74 (1872). Here, the prohibition against aerial delivery in the national

---

[6] It is also worth noting that the Supreme Court in *Vuitch* was concerned with construing the relevant statute so as to uphold the constitutionality upon challenge for vagueness. *Vuitch*, 402 U.S. at 70. The Supreme Court found that the statute did not outlaw all abortions, but only those which are not performed under the direction of a competent, licensed physician and not necessary to preserve the mother's life and health. *Id.* In looking to the legislative history of the statute, the Court found "[i]t would be highly anomalous for a legislature to authorize abortions necessary for life or health and then to demand that a doctor, upon pain of one to ten years' imprisonment, bear the burden of proving that an abortion he performed fell within that category." *Id.* The statutory structure and the rationale behind the Supreme Court's decision does not neatly apply to the relevant provision at issue in this case.

parks is still accurately and clearly described even if the permit and emergency exception are omitted, further indicating that the exceptions are not incorporated into the enacting clause; therefore, the analysis does not end with *Vuitch*.[7] As Carey points out himself, both *Vuitch* and *McKelvey* are interpretative aids for determining whether a statutory exception is an element of an offense or an affirmative defense. *See, e.g., United States v. Steele*, 147 F.3d 1316, 1319 (11th Cir. 1998) ("Both the *Vuitch* and the *McKelvey* rules are rules of statutory construction, or 'general guide[s] to the interpretation of criminal statutes'") (quoting *Vuitch*, 402 U.S. at 70); ECF No. 27 at 4.

The Supreme Court and the Ninth Circuit have announced other general guides to help determine what constitutes an element of an offense that are useful to the structural analysis of § 2.17(a)(3) here. The Supreme Court has described an affirmative defense – in contrast to an element of an offense – as one that "does not serve to negative any facts of the crime. . . ." *Patterson v. New York*, 432 U.S. 197, 207 (1977); *see also United States v. Mayo*, 705 F.2d 62, 75 (2d Cir. 1983). Correspondingly, the government is constitutionally prohibited from shifting the burden of proof "only when an affirmative defense *does* negate an element of the crime." *Smith*, 568 U.S. at 110 (internal citations and quotation marks omitted). "Where instead [a defense] excuse[s] conduct that would otherwise be punishable, but does not controvert any of the elements of the offense itself, the Government has no constitutional duty to overcome the defense beyond a reasonable doubt. *Id*. Here the permit exception and emergency exception *do not negate* an element of the offense itself which prohibits aerial delivery of a person or object in the Park. This is the case because the statute "can exist without the language of the exception." *United States v. Oettinger*, 817 F. Supp. 819, 821 (N.D. Cal. 1992). The exception to this prohibition instead "excuse[s] conduct that would otherwise be punishable," hence there was no

---

[7] Carey further argues that because of *Vuitch*'s abrogation of *McKelvey*, the Court is not bound by the several Ninth Circuit cases cited by the government applying *McKelvey*. ECF No. 27 at 2-3. As discussed, the Court disagrees with Carey's contention and looks to other interpretative guides to determine whether the permit exception constitutes an element of the offense under § 2.17(a)(3).

8

duty for the government to overcome the defense and prove the negative – that Plaintiff did not have a permit – in order to establish a violation of §2.17(a)(3). *Smith*, 568 U.S. at 110; *see, e.g.*, *United States v. Burns*, No. 16-CR-132 (CRB), 2017 WL 2651983, at *6 (N.D. Cal. June 20, 2017) (finding first that exceptions to statute -18 U.S.C. § 922 - were not incorporated into the enacting clause and second that because the exceptions did not "negate an element of the crime," they were affirmative defenses) (citing *Vuitch*, 402 U.S. at 70 and *Smith*, 568 U.S. at 112).

The Ninth Circuit has also considered the breadth of the exception in relation to the overall provision as a guide to interpreting statutes as well. *United States v. Gravenmeir*, 121 F.3d 526, 528 (9th Cir. 1997). For example, the Ninth Circuit recently stated that "the statute[] at issue [in *McKelvey*] laid out prohibited conduct and then provided an escape hatch exception" and hence was held to constitute an affirmative defense. *United States v. Hui Hsiung*, 778 F.3d 738, 757 (9th Cir. 2015). The permit and emergency exception contained *after* the prohibited conduct (*i.e.*, delivering a person by parachute) in the text of §2.17(a)(3) are not only more analogous to an escape hatch to generally prohibited conduct but the structure of the statutory text is also more comparable to that analyzed in *McKelvey* and the Ninth Circuit cases that followed that decision. In *Gravenmeir*, the statute, 18 U.S.C. § 922(o), prohibited the transfer or possession of a machine gun *except* "with respect to ... (B) any lawful transfer or lawful possession of a machine gun that was lawfully possessed before the date this subsection takes effect," and the Ninth Circuit found the exception was an affirmative defense. *Gravenmeir*, 121 F.3d at 528; *see also Freter*, 31 F.3d at 787-88 (exception for federally permitted releases from statute constituted an affirmative defense where relevant statute, 42 U.S.C. § 9603(b)(3), provided that "[a]ny person ... in charge of a facility from which a hazardous substance is released, *other than a federally permitted release,* ... who fails to notify immediately the appropriate agency" may be subject to penalties). "Where, as in this case, the 'statutory prohibition is broad and an exception is narrow, it is more probable that the exception is an affirmative defense.'" *Gravenmeir*, 121 F.3d at 528 (quoting *Freter*, 31 F.3d at 788); *see also United States v. Henry*, 615 F.2d 1223, 1234 (9th Cir. 1980) (finding defendant was responsible for establishing that he came within the exception under 18 U.S.C. § 922 (e) which provides "[i]t

shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce…any firearm or ammunition…except [] any passenger who owns or legally possesses a firearm or ammunition…"). This reading of the statute is consistent with this Circuit's "well-established rule ... that a defendant who relies upon an exception to a statute ... has the burden of establishing and showing that he comes within the exception." *Gravenmeir*, 121 F.3d at 528 (quoting *Freter*, 31 F.3d at 788).

In *U.S. v. Oxx*, 56 F. Supp. 2d 1214 (D. Utah 1999), the court addressed the same issue that is before the court now and the court found the permit and emergency exceptions in § 2.17(a)(3) constituted elements of the crime that the United States failed to establish. *Oxx*, 56 F. Supp. 2d at 1219.[8] However, the court did not conduct an in-depth analysis of the statute's textual structure, and instead the court found "[a]lthough the text of the regulation, in its current form, places the permit question within a clause that discusses exceptions from the prohibition," the legislative history and parties relative ability to present evidence on the permit "weigh[ed] heavily in favor of placing the burden of demonstrating the absence of a permit on the United States." *Oxx*, 56 F. Supp. 2d at 1220. In distinguishing other cases that held that the United States is not required to negate exceptions that are not considered elements of the offense, and citing *McKelvey*, the Court in *Oxx* relied on the fact that in the present case the United States considered the absence of a permit to be an element of the offense charged because "the lack of a permit was expressly contained in the charging document and was discussed by the United States [in its opening statement] as part of its burden of proof." *Oxx*, 56 F. Supp. 2d at 1221. Here,

---

[8] The Court in *Oxx* noted that only one other case has addressed the issue of evidence necessary to establish a 36 C.F.R. § 2.17(a)(3) offense, *United States v. Carroll*, 813 F. Supp. 698 (E.D. Mo. 1993). *Oxx*, 56 F. Supp. 2d at 1218, 1221. However, as noted by the Magistrate Judge, *Carroll* relied on the fact that "[t]he evidence [was] undisputed that no permit or other authorization was granted for the climb or the parachute jump" in that case. *Carroll*, 813 F. Supp. at 703. The *Carroll* decision did not make an explicit finding on the respective burden of proof. *See id*.

although the government's trial brief erroneously indicated the lack of permit was an element of the offense, ECF No. 26 at 2, the charging document and government's opening statement did not do so in contrast to *Oxx*. The trial brief's error does not logically outweigh the textual analysis which the court finds more indicative and significant to the statutory interpretation.

Accordingly, the Court finds that the statutory structure weighs in favor of finding that the permit exception in § 2.17(a)(3) constitutes an affirmative defense and that the government did not have the burden of proving the nonexistence of permit.

### 2. **Legislative History**

With respect to the legislative history of § 2.17(a)(3), the *Oxx* court noted that it was sparse but cited certain history which the court apparently viewed as supportive of permit exception being an element of the offense. *Oxx*, 56 F. Supp. 2d at 1220. This Court's review of such history suggests a contrary conclusion – that the permit or emergency exception was a rare, narrow exception to a broader prohibition of aerial delivery in the national parks. While some of the legislative history discusses permitting requirements and that the Park Superintendent *may permit* air delivery, *see, e.g.*, 48 Fed. Reg. 56974 (Dec. 27, 1983), it is clear that permit issuance is the exception, not the rule:

> The Service intends that other than emergency operations conducted under the authority of § 2.17(a)(3) the permitting authority of the superintendent be limited to the project requirements of a limited scope and *nonrecreational nature* conducted by a State or a political subdivision thereof, a Federal agency, or other person demonstrating a legitimate need that is compatible with park purposes and that the superintendent determines that the activity is authorized pursuant to existing law and can only be accommodated by the short-term use of an aircraft. Recurrent recreational or commercial use must be set forth for public deliberation as a proposed rule.

49 Fed. Reg. 18448 (Apr. 30, 1984) (emphasis added); 48 Fed. Reg. 30268 (June 30, 1983) ("This regulation [§ 2.17] limits the operation and use of aircraft to designated areas and *generally prohibits* the air delivery of persons or property.") (emphasis added); 30 Fed. Reg. 1857 (Feb. 10, 1965) ("The purpose of this amendment is to protect park values, including wilderness, in national parks and monuments by providing reasonable controls over the aerial delivery except in extreme emergency situations…). That the statute contains a broad prohibition

11

with deliberately narrow exceptions is consistent with an affirmative defense. *Gravenmeir*, 121 F.3d at 528; *United States v. Durrani*, 835 F.2d 410, 420 (2d Cir. 1987) ("affirmative defenses arise where the legislature has manifested its judgment that the activity proscribed by the general prohibition can best be justified or explained by the defendant.... Exceptions to a general prohibition are a legitimate means to implement a legislative design and often serve to define the scope of the prohibition") (internal quotation omitted). Carey's interpretation that the prohibition is narrow but the exception is broad is at odds with the plain language of the statute and the legislative history. ECF No. 27 at 6.

Accordingly, the Court finds that the legislative history also weighs in favor of finding that the permit exception in § 2.17(a)(3) is an affirmative defense.

### 3. Relative Ability Of Parties To Adduce Evidence As To The Exception

Furthermore, this Court disagrees with *Oxx*'s finding concerning the parties' relevant ability to present evidence on the exception. In *Oxx*, the court, without much analysis, found: "As to the parties' relative ability to present evidence of the existence of a permit, the court finds that the United States, as the issuer of the permit, would be in the best position to demonstrate the non-existence of such authorization. This could have easily been demonstrated by having the Park Superintendent or some other official person testify that no permits for BASE jumping had been issued to any of the defendants." *Oxx*, 56 F. Supp. 2d at 1220. This Court does not find this factor to weigh particularly heavily in Carey's favor. If Carey had received a permit to BASE jump, he was at least in an equally good position to present evidence of this fact.[9] Nor does Carey argue that he was somehow not given the opportunity to present evidence of a permit here. In *Gold v. United States*, at the close of the government's case, the court, in response to a request

---

[9] Carey argues that the Magistrate Judge's finding that Carey would have been in the best position to introduce evidence of a permit "ignores how a defendant in a criminal case would even be able to introduce such evidence, where, as here, the defendant exercises his or her Fifth Amendment right against self-incrimination and chooses not to testify at trial." ECF No. 25 at 11-12. This argument is unpersuasive; evidence of a permit could be presented without Carey testifying.

from government counsel, took judicial notice of the fact that United Airlines is a common carrier engaged in interstate commerce and appellant defendant argued that this was error and "his objection [was based] upon the broad proposition that a court cannot, in a criminal case, take judicial notice of a fact which constitutes an element of the crime charged." 378 F.2d 588, 592 (9th Cir. 1967). The Ninth Circuit held:

> The appellant did not, of course, offer or request an opportunity to offer evidence that United Airlines is not a common carrier engaged in interstate commerce. Equally of course, the appellant does not here request a reversal for the purpose of affording him such an opportunity. He requests a reversal so that the case may be tried again upon the same uncontradicted evidence of the government as to the status of the carrier, but without the court's judicial notice of the indisputable fact… Such a reversal would be completely formalistic and useless.

*Gold*, 378 F.2d at 592; *see also Denius v. Dunlap*, 330 F.3d 919, 927 (7th Cir. 2003) ("The defendants have simply caused additional judicial work by contesting a factual issue that, according to information readily available in the public domain, cannot be reasonably disputed"). Similarly, Carey is not arguing that he was unable to present evidence that he did in fact have a permit or emergency that falls with the excepted conduct of §2.17(a)(3) but he nonetheless argues he should be acquitted.[10] The Court finds the argument without merit.

---

[10] Nor is the Court moved by Carey's argument concerning the propriety of considering Yosemite's Superintendent's Compendium and Park Safety Regulations. ECF No. 25 at 11-12, n. 3. Carey argues that the Magistrate Judge improperly conducted independent research on the Compendium and Regulations to reach the conclusion that Carey was in the best position to provide evidence of a permit since these regulations provide that BASE jumping is prohibited in Yosemite. *Id.*("Such independent factual research of extrajudicial material by a Magistrate Judge via the internet that is untested by the adversary system and considered after the close of evidence explicitly violates American Bar Association's Model Code of Judicial Conduct Rule 2.9(C)"). However, these contentions are directly contradicted by the record; Carey was explicitly given the opportunity to address the propriety of taking judicial notice of Yosemite's prohibition against BASE jumping. Tr at 58; 60:3-61:2. Second, "it is long established that courts may take judicial notice of the rules and regulations of an administrative agency, including in criminal cases." *United States v. Knauer*, 635 F. Supp. 2d 203, 206 n. 2 (E.D.N.Y. 2009) (discussing Gateway's Superintendent's Compendium and stating "[j]udicial notice of such documents may be taken after a trial and for the first time on appeal") (collecting cases); *United States v. Penn Foundry & Mfg. Co.*, 337 U.S. 198, 216 (1949) ("official

The Court finds that the statutory text and structure, the legislative history, and the parties relative ability to adduce evidence of a permit weigh in favor of finding that the permit exception in § 2.17(a)(3) constitutes an affirmative defense, not an element of the offense that the government was required to prove.

B. **Recusal Pursuant To 28 U.S.C. § 455(a)**

Carey secondly argues that the Magistrate Judge erred by failing to recuse himself after improperly reading, after the close of evidence and before a finding of guilt, an extrajudicial news article Carey describes as prejudicial and inflammatory. ECF No. 25 at 13-18. Specifically, Carey argues that under 28 U.S.C. § 455(a), Judge Seng should have recused himself because he read an article in the Fresno Bee which "provides a personal history of Mr. Carey, including alleged details regarding his long-time passion for BASE jumping, discusses his current criminal case in Yosemite National Park, and references an alleged desire to change the law prohibiting BASE jumping in Yosemite National Park." ECF No. 25 at 14. The government rejoins that Carey's problem was self-created in that he chose to give an interview and comment on his past BASE jumping experience and advocate that it should be legalized. ECF No 26 at 10-11. The government further argues that Judge Seng simply mentioned in a footnote in his 12-page order that he had reviewed the story while at the same time reiterating that the Court was not going to do anything other than serve its role to determine the elements of the offense. *Id.* Lastly, the

---

communications… like reports, rules and regulations of agencies … are equally reliable and authoritative and need no further proof"); *see Paralyzed Veterans of Am. v. McPherson*, No. cv 06-04670 SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 8, 2008) (taking judicial notice of information appearing on and printed from official government website); *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999) ("publicly-available policy statements of the Department of the Interior" were "administrative policy statements that help to flesh out the policy on which the government relies [and] are akin to judicial opinions, treatises, law review articles, public records, and the like that may be cited for the first time on appeal in support of a legal theory that was raised in the trial court"). Carey does not present support for the proposition that taking judicial notice of the publically available regulations cited in Judge Seng's order, ECF No. 9 at 11, is not permissible under Federal Rule of Evidence 201 nor does he challenge the accuracy of the district court's conclusion that BASE jumping is explicitly prohibited by such publically available documents.

government argues that any error or impropriety that occurred by the judge seeing or reading the news story was harmless.

The above-mentioned footnote to Judge Seng's September 26, 2017 order states:

In short, while some, reportedly including Defendant[FN 5], might like to see this case produce an endorsement of BASE jumping and/or condemnation of the regulation prohibiting it, and others will seek just the opposite, it will do no such thing. The Ninth Circuit Court of Appeals has already upheld the enforceability of the 'delivery by air' and 'creating a hazardous condition' regulations as applied to BASE jumping.

[FN 5 *See* Pablo Lopez, The Fresno Bee, *He leaps off Yosemite cliffs, knowing it's illegal. Can his court case make BASE jumping legit*? (Aug. 10, 2017), available at, http://www.fresnobee.com/news/local/article166303332.html.]

ECF No. 9 at 3-4. Carey argues that because his alleged statements contained in the article "involve particularly prejudicial and damning admissions regarding his case" it was error for the Magistrate Judge not to recuse himself pursuant to 28 U.S.C. § 455(a) after reading it after the close of evidence because a reasonable person would conclude that the Magistrate Judge's impartiality might reasonably be questioned after reading the article. ECF No. 25 at 15-16.

28 U.S.C. § 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This provision "asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (internal citation omitted). "It is well established that the recusal inquiry must be made from the perspective of a *reasonable* observer who is *informed of all the surrounding facts and circumstances*." *Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913, 924 (2004) (internal quotation omitted); *see also Clemens v. U.S. Dist. Court for the Cent. Dist. of Cal.,* 428 F.3d 1175, 1178 (9th Cir. 2005) ("The reasonable person in this context means a well-informed, thoughtful observer, as opposed to a hypersensitive or unduly suspicious person"). In determining whether a reasonable, objective observer would conclude that a judge's impartiality might reasonably be questioned so as to require recusal pursuant to § 455(a), "it is critically important ... to identify the facts that might reasonably cause an objective observer to question [the judge's] impartiality." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 865

(1988); *Clemens*, 428 F.3d at 1178.

The fact that a judge reads the news cannot be the only grounds for questioning his or her impartiality, even if reading the news happens to include reading an article about a case he or she is presiding over. *See, e.g.*, *Dean v. Colvin*, 585 F. App'x 904, 904–05 (7th Cir. 2014) ("Judges do not violate the Constitution by consulting their own funds of knowledge about the world, or by augmenting that knowledge ... No judge is required to approach a case in complete ignorance. An open mind is required; an empty mind is not"). Carey suggests that after "reading the first line of the article it was incumbent upon the magistrate judge to either refrain entirely from reading the article, or" after reading the article and realizing it pertained to party in case pending before him should have "cease[d] reading and . . . inform[ed] the parties of the exposure." ECF No. 25 at 17. The presence (or reading) of an extrajudicial source in and of itself does not establish bias. *Liteky v. United States*, 510 U.S. 540, 554 (1994). "The fact that an opinion held by a judge derives from a source outside judicial proceedings is not…a *sufficient* condition for 'bias or prejudice' recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice." *Id.* Recusal for considering an extrajudicial source is only required if a reasonable person could perceive a significant risk that the case will be resolved on a basis other than the merits. *Holland*, 519 F.3d at 913.

There is no indication that the judge's reading of the article, which he merely indicates in passing reference in a footnote, had any bearing on his conclusion or the legal analysis such that it would show some sort of partiality to a reasonable person reading the order. The Magistrate mentioned that while some, including Carey, may like to see BASE jumping legalized, he must enforce the regulation which has been upheld by the Ninth Circuit and interpreted as prohibiting BASE jumping. ECF No. 9 at 3-4. This passing reference to the news article is contained within the context of the order's in-depth legal analysis that does not rely on any information from the article. In *Hardy v. City of Milwaukee*, while ruling on city's post-trial motion to reduce the jury's punitive damages award, the judge made statements referencing a news article that noted defendant city police chief had criticized a New York case in which police stop-and-frisk tactics

had been determined to have been illegal. The Court found that reference to such news article did not require disqualification from presiding over § 1983 action since the statements did not show bias or partiality against city. The Court further found that even if judge had relied on extrajudicial source, a news article, in making the statement, it was followed by a detailed analysis of the legality of the underlying police stop. 99 F. Supp. 3d 883, 892 (E.D. Wis. 2015); *Sanchez v. United States*, No. SA CR 02-0319 DOC, 2010 WL 5174391, at *3 (C.D. Cal. Dec. 15, 2010) (denying motion to disqualify under § 455 and finding "neither the court's reference to the newspaper articles during the Rule 29 hearing… nor the court's overruling of [defendant's] objection to a statement in the pre-sentence report referencing the articles… show personal bias against [defendant]. The court's statements merely reflect that the evidence at trial, as well as the resulting jury verdict, were consistent with the contents of the articles").

There is evidence in the trial record that amply supports the Magistrate Judge's conviction of Carey. The order's factual findings are derived from the facts presented at the bench trial on August 9, 2017. Namely, it was testified to that Carey was found in a tree, not possible of being climbed, with a parachute above him and equipment that was identified as used for BASE jumping. The consideration of an extrajudicial source that shows bias or prejudice requiring recusal pursuant to §455(a) must also result in an "opinion on the merits on some basis other than what the judge learned from his participation in the case." *Barnett v. City of Chicago*, 952 F. Supp. 1265, 1268 (N.D. Ill. 1997) ("Judges, however, no matter what their backgrounds or temperaments, must always strive to put aside their out of court experiences or perspectives in order to apply the law to the particular facts presented in the courtroom"; the "extrajudicial source doctrine...does not require that every scrap of knowledge acquired outside of judicial proceedings will necessarily result in recusal"); *see generally Fox v. De Long*, No. 2:14-CV-02947-KJM, 2016 WL 6088371, at *12 (E.D. Cal. Jan. 8, 2016) ("on an appeal from a bench trial, the receipt of inadmissible evidence over objection is ordinarily not ground for reversal if there was other, admissible evidence sufficient to support the findings. The judge is presumed to have disregarded the inadmissible evidence and relied on the admissible evidence"). Here, Judge Seng did not base his opinion on any extrajudicial information or rely on the

extrajudicial knowledge in any way that showed he was biased. The Court finds that a *reasonable* observer who is *informed of all the surrounding facts and circumstances* would not find that there was an appearance of impartiality from either reading the news article or mentioning it in passing in the order. Accordingly, Judge Seng was not required to recuse himself pursuant to § 455(a) and Carey is not entitled to remand to a different Magistrate for a retrial.

## V. CONCLUSION AND ORDER

For the reasons set forth herein, Carey's appeal is DENIED and his conviction is AFFIRMED.

IT IS SO ORDERED.

Dated: **May 9, 2018**  /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE